## ARTHUR S. DEMOULAS *vs.* DEMOULAS SUPER MARKETS, INC., & others.[1]

Middlesex. September 3, 1998. - December 22, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Judge. Practice, Civil,* Judicial discretion, Disqualification of judge, Judgment. *Corporation,* Stockholder's derivative suit, Transfer of shares.

A Superior Court judge did not err in denying a second motion seeking her recusal, filed by defendants almost two years after entry of judgment in favor of the plaintiff and after appellate review, where the litigation had been complex and protracted, where the defendants failed to show substantial justification for their lack of timeliness in filing the motion, and where the affidavits submitted by the defendants were insufficient to establish a reasonable basis to question the judge's impartiality. [546-552]

A shareholder derivative action was remanded for amendment of the supplemental judgment to account for any taxes paid by the defendants, which should be deducted from the net profits the judgment required the defendants to pay to the plaintiff. [552-553]

CIVIL ACTION commenced in the Superior Court Department on April 30, 1990.

Following review by this court, 424 Mass. 501 (1997), motions for judicial recusal, to vacate prior orders, for relief from judgment, and to alter or amend a supplemental judgment were heard by *Maria I. Lopez,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Edward J. Barshak (Christine M. Netski & Susan A. Hartnett* with him) for Demoulas Super Markets, Inc., & others.

*Robert C. Gerrard (Carol R. Cohen & Thomas S. Fitzpatrick* with him) for the plaintiff.

---

[1] Valley Properties, Inc.; Market Basket, Inc.; Doric Development Corp.; Lee Drug, Inc.; and Telemachus A. Demoulas, Irene Demoulas, Arthur T. Demoulas, Frances D. Kettenbach, Glorianne D. Farnham, and Caren D. Pasquale, individually and, where applicable, as general partners of 231 Realty Associates.

LYNCH, J. The defendants appeal from a Superior Court judgment denying their motions for judicial recusal, to vacate all prior orders, and for relief from judgment. The defendants also appeal from the entry of a supplemental judgment after remand. We granted the defendants' application for direct appellate review. For the reasons set forth below, we affirm the denial of the recusal motion. However, we remand the supplemental judgment to the Superior Court for further proceedings in accordance with this and our earlier opinion. *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501 (1997) (*Demoulas I*).

*Facts.* The facts surrounding the dispute between the parties are more thoroughly set out in *Demoulas I.*

The present case arises from a shareholder derivative action, brought in 1990 by Arthur S. Demoulas, on behalf of Demoulas Super Markets, Inc. (DSM), and Valley Properties, Inc. (Valley), against Telemachus A. Demoulas and others, alleging that the defendants fraudulently and in breach of their fiduciary duties, conspired to divert corporate opportunities from DSM and Valley to Market Basket, Inc.; Doric Development Corporation, Inc.; Lee Drug, Inc.; and 231 Realty Associates.

The defendants' pretrial motions included a motion for judicial recusal which was denied.[2] After a jury-waived trial, judgment was entered for the plaintiff, and the defendants appealed.

At about the time that the appeal in *Demoulas I* was entered in the Appeals Court the defendants began their fifteen-month investigation regarding allegations of ex parte contact and improper conduct involving the trial judge and the plaintiff's attorney. On March 13, 1997, we affirmed the judgment in all material respects. *Demoulas I, supra* at 503-504. In accordance with the judgment, a transfer of assets from Market Basket and 231 Realty Associates was scheduled to occur on June 28, 1997, and June 30, 1997. The defendants filed the recusal and other motions now before us on June 25, 1997, almost two years after the entry of judgment in favor of the plaintiff, mere days before the transfer was to take place.

The defendants alleged in their most recent recusal motion and accompanying affidavits that the judge had social contact

---

[2]The defendants argued that the judge was biased because she had presided over another action between the same parties. We affirmed the judge's denial of the recusal motion in *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 524-526 (1997) (*Demoulas I*).

with the lead counsel for the plaintiff in a restaurant owned by the judge's husband during the pendency of the Superior Court trial. The defendants argued that recusal was required and that they were entitled to relief from judgment based on Canon 3 of the Code of Judicial Conduct, which provides that "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . ." S.J.C. Rule 3:09, Canon 3 (C) (1), as appearing in 382 Mass. 811 (1981).

The judge referred the defendants' motions to the Chief Justice of the Superior Court, who referred the pending motions back to her.[3] In his order, the Chief Justice concluded that it was within the discretion of the judge to decide whether recusal was required. He ruled that the judge was in the best position to hear and to decide the motions, and noted his confidence in her ability to be impartial.

The judge conducted a hearing on July 21, 1997. She, as well as the lead counsel for the plaintiff, denied the veracity of the allegations in the affidavits supporting the defendants' recusal motion. During the hearing, the defendants again requested that the motion be referred to another judge. On July 22, 1997, the judge issued her order stating:

> "(1) [H]aving examined my conscience, I know there is no truth to the allegations and thus no reason to recuse myself or to vacate the judgments; (2) the motion is untimely; (3) having examined my conscience, I can impartially discharge the two remaining issues in these cases; (4) no objective, knowledgeable member of the public would find a reasonable basis for doubting this Judge's impartiality with regards to these two issues; and (5) the attorneys involved in this motion have not complied with their duty . . . to conduct a reasonable inquiry in order to acquire knowledge, information and form a belief that the allegations made in this motion have a basis in fact."

On October 7, 1997, the judge entered a supplemental judg-

---

[3]The plaintiff suggests that the defendants cannot properly raise the denial of their recusal motion on appeal because they did not appeal from the order of the Chief Justice of the Superior Court referring the defendants' motions back to the trial judge. The record shows however that the defendants filed a notice of appeal on August 18, 1997. See Mass. R. A. P. 3, as amended, 397 Mass. 1229 (1986); Mass. R. A. P. 4 (a), as amended, 395 Mass. 1110 (1985). See also *Richman v. Richman*, 28 Mass. App. Ct. 655, 666 (1990).

ment in this case. The supplemental judgment did not contain any provision regarding investment credits due to the defendants, but did however, contain a provision regarding tax credits for taxes paid by the individual defendants. The defendants' motion to alter or to amend the supplemental judgment was denied on November 3, 1997.

1. *The recusal motion.* The defendants' main contention is that the judge erred in denying the defendants' motion for recusal under Canon 3 (C),[4] and relief from judgment pursuant to Mass. R. Civ. P. 60 (b) (6), 365 Mass. 828 (1974).

In reviewing a judge's denial of a recusal motion, the standard of review on appeal is, ordinarily, whether there was an abuse of discretion.[5] However, we have never before considered the procedure to be followed when a recusal motion is based on allegations of extrajudicial conduct which are disputed by the judge.[6] We conclude for the reasons explained below that, on

[4]The defendants argue that the judge erred in failing to refer the motion to another judge for an evidentiary hearing because she disputed the factual allegations supporting the recusal motion.

[5]"The matter of recusal is generally left to the discretion of the trial judge . . . and an abuse of that discretion must be shown to reverse a decision not to allow recusal" (citations omitted). *Haddad* v. *Gonzalez,* 410 Mass. 855, 862 (1991). See S.J.C. Rule 3:09, Canon 3 (C) (1) (a), as appearing in 382 Mass. 811 (1981).

[6]Usually when a judge is confronted with a recusal motion she follows a two-prong analysis. A "judge [must] consult first [her] own emotions and conscience" to determine whether she is free from bias or prejudice. *Id.,* quoting *Lena* v. *Commonwealth,* 369 Mass. 571, 575 (1976). If the judge determines she is impartial, then she must objectively evaluate whether this was a proceeding in which "[her] impartiality might reasonably be questioned." *Haddad* v. *Gonzalez, supra,* quoting S.J.C. Rule 3:09, Canon 3 (C) (1). But in *Furtado* v. *Furtado,* 380 Mass. 137, 140 n.1 (1980), this court stated that "[a] judge may not rely on his private knowledge of particular facts that are not matters of which he can take judicial notice." The closest case to this one is *MacCuish* v. *Volkswagenwerk A.G.,* 22 Mass. App. Ct. 380, 391-392 (1986), where the trial judge and the plaintiff's counsel disputed the nature of what was said in chambers. The court determined that there was no basis for recusal where the entire proceeding revealed no evidence of bias. Other State courts have addressed the narrow issue whether the party moving for recusal is entitled to a hearing before another judge where the trial judge contests the veracity of the affidavits. See *North Carolina Nat'l Bank* v. *Gillespie,* 291 N.C. 303, 310-311 (1976) (trial judge should have either disqualified himself or referred matter to another judge before whom he could have filed affidavits in reply or sought permission to give oral testimony); *Municipal Publs., Inc.* v. *Court of Common Pleas,* 507 Pa. 194, 196

the facts before us, no evidentiary hearing was required and that the denial of the defendants' motions was not error.

(a) *Timeliness of the recusal motion.* The judge ruled that the motion was not timely. The defendants contend the timeliness of the motion is not relevant to the determination whether the defendants are entitled to an evidentiary hearing before another judge. Our analysis takes into consideration both the timeliness of the motions and the substance of the allegations.

Substantial authority exists that recusal motions filed after trial are presumptively untimely at least absent a showing of good cause for tardiness. "Discharge of a judge from a case after hearings have begun is unusual and ought not to be done in the absence of compelling reasons." *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 665 (1996), quoting *Edinburg* v. *Cavers*, 22 Mass. App. Ct. 212, 217 (1986). See *Commonwealth* v. *Davis*, 13 Mass. App. Ct. 179, 187-188 (1982). "[A] motion for recusal filed weeks after the conclusion of a trial is presumptively untimely absent a showing of good cause for its tardiness." *United States* v. *Studley*, 783 F.2d 934, 939 (9th Cir. 1985),[7] citing *United States* v. *Hurd*, 549 F.2d 118, 119 (9th Cir. 1977). See *Waggoner* v. *Dallaire*, 649 F.2d 1362, 1370 (9th Cir.

---

(1985) ("where the judge has personal knowledge of disputed facts and permits himself to be a crucial witness in the proceedings . . . [he] must recuse himself and the issue of impartiality must be litigated before and decided by another judge").

[7]Federal courts are governed by the Federal recusal statutes, 28 U.S.C. §§ 144 and 455 (1994). We therefore only rely on the Federal decisions by way of analogy.

Section 144 states:

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term [session] at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

Section 455 states in pertinent part:

"(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be

1981) ("A disqualification motion filed after trial and judgment is generally considered untimely"); *Crawford* v. *Crawford,* 429 Pa. Super. 540, 550-551 (1994) (failure to request recusal before judge has ruled on substantive matter precludes right to have judge disqualified; court affirmed denial of recusal motion on grounds it was waived and stated judicial bias may not be raised for first time during posttrial proceedings).

Having in mind that this is the second recusal motion of the defendants; that the proceedings before the judge were extensive, time consuming, and complicated; and that the case had reached its final stage, we conclude that the burden is on the defendants to make a strong showing that nothing could have been done at an earlier time. "The law is well settled that

questioned.

"(b) He shall also disqualify himself in the following circumstances:

"(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

"(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

"(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

"(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

"(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

"(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

"(ii) Is acting as a lawyer in the proceeding;

"(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

"(iv) Is to the judge's knowledge likely to be a material witness in the proceeding."

one seeking the disqualification of the judge must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." *United States* v. *Kelly*, 519 F. Supp. 1029, 1050 (D. Mass. 1981). "[A] party, knowing of a ground for requesting disqualification, can not be permitted to wait and decide whether he likes the subsequent treatment that he receives." *Matter of United Shoe Mach. Corp.*, 276 F.2d 77, 79 (1st Cir. 1960).

The defendants' affidavits demonstrate that much of the relevant information on which they rely was available to them long before they filed their motion. The defendants state that their investigation was triggered by rumors of which they were aware as early as December, 1995, shortly after the trial concluded, of social contact between the judge and the plaintiff's lead counsel allegedly occurring between late 1993 and the middle of 1995. See *United States* v. *Brinkworth*, 68 F.3d 633, 639-640 (2d Cir. 1995) (defendant's recusal motion based on appearance of partiality made days before trial was untimely where it was based on rumors defendant admitted to knowing for years, where recent statement to support motion was based on past rumor, and where litigation had been going on before judge for three years, especially where motion was filed soon after judge refused to make "preplea commitment to sentencing"). See also *In re Petit*, 204 B.R. 271, 274 (Bankr. D. Me. 1997) (judge stated information on which motions to disqualify were premised were known to movants for nine months prior to filing their motions and clearly were not filed at earliest opportunity),[8] quoting *Matter of United Shoe Mach. Corp.*, *supra*; *Ricci* v. *Key Bancshares of Me., Inc.*, 111 F.R.D. 369, 377 (D. Me. 1986). Furthermore, the judge noted in her decision:

> "The employees referenced in the motion were all readily available to the investigators and defendants' counsel during this entire nineteen month period. At no time prior to this motion was any allegation made by defendants' counsel or any third party impugning my conduct and defendants did not raise this issue when they

---

[8]The judge stated that "[t]he Movants' strategy herein epitomizes the gamesmanship, judge-shopping, and sandbagging which the First Circuit has condemned." *In re Petit*, 204 B.R. 271, 274 (Bankr. D. Me. 1997), citing *In re Cargill, Inc.*, 66 F. 3d 1256, 1263-1264 (1st Cir. 1995), cert. denied, 517 U.S. 1156 (1996).

argued for my recusal in their appeal to the Supreme Judicial Court. Thus, this motion was not timely filed."

Nor are we required to turn a blind eye to the fact that the motion was filed at the eleventh hour after years of maneuvering by the defendants on the losing side of a judgment in excess of one hundred million dollars.

In these circumstances, there is an obligation on the part of the movants to make a strong showing that they were not waiting until the last minute as a trial tactic. If the parties were under no obligation to file a motion for recusal immediately on obtaining information suggesting grounds for such a motion, litigants would be encouraged to hold recusal motions until after the judge had decided the case. A party disappointed with the decision would "then pull[] the recusal option off the shelf in hopes of locating a more sympathetic trier." *In re Cargill, Inc.*, 66 F.3d 1256, 1263 (1st Cir. 1995), cert. denied, 517 U.S. 1156 (1996). "The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming." *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 464 (1991), quoting *Franks* v. *Nimmo*, 796 F.2d 1230, 1234-1235 (10th Cir. 1986). "[T]he risk of injustice to the parties weights far more heavily on [the plaintiff's] side of the scales . . . and the public's confidence in the judicial process . . . would be more likely to be undermined if the law were to countenance a sundering of the result [over three years after the judgment was entered] later on grounds other than the merits." *Anthony's Pier Four, Inc., supra*, quoting *Polaroid Corp.* v. *Eastman Kodak Co.*, 867 F.2d 1415, 1420 (1st Cir.), cert. denied, 490 U.S. 1047 (1989). "[T]iming of the recusal motion (some eleven months after the judge had started presiding over the many aspects of this complicated litigation) bespeaks an attempt on [the movant's] part to minimize the disastrous effect upon her case of her admissions of perjury and document fraud." *Edinburg* v. *Cavers*, 22 Mass. App. Ct. 212, 218 (1986).

The timing of this motion makes it inherently suspect. The defendants have failed to demonstrate that the filing of this motion was not a last-minute attempt to nullify an adverse judgment.

(b) *Sufficiency of the allegations.* In this context we look to determine whether the allegations were at least sufficient to require a hearing before another judge.[9] In doing so we assume the allegations contained in the defendants' affidavits are true for the purposes of this argument.[10]

Paul A. Finn, an affiant with no apparent interest in the case, stated that he recalled seeing the judge and the plaintiff's lead counsel sitting at a table in a restaurant between the fall of 1993 or early winter of 1994. His affidavit, however, makes no reference to what was being said, how long the judge was there, or the circumstances of the meeting. See *Carbana* v. *Cruz*, 595 F. Supp. 585, 587 (D.P.R.), aff'd, 767 F.2d 905 (1st Cir. 1984) (affidavit for disqualification which merely alleged "connection" between certain attorneys in case and judge, without specifying nature, time, conditions, or circumstances of such "connection," was merely conclusory and legally insufficient to warrant recusal [28 U.S.C. § 144]).

Other affiants presumably less disinterested allege the presence of the judge and the attorney in different locations of a public restaurant on numerous occasions, but with limited social contact. On two occasions the parties were said to be sitting at the same table but with no allegation concerning the duration of their encounter or what was being said.[11] Finally the parties were said to have been standing together outside the same restaurant on two occasions apparently waiting for a parking at-

[9]Allegations which require a hearing to determine the credibility of the judge against whom recusal is sought should, of course, be decided by another judge. See *Dyson* v. *Sposeep*, 637 F. Supp. 616 (N.D. Ind. 1986).

[10]Social contact between the judge and litigants in the course of trial is certainly disfavored and should not occur. See *Selfridge* v. *Gynecol, Inc.*, 564 F. Supp. 57, 58 (D. Mass. 1983) (trial judge personally acquainted and shared professional friendship with plaintiff's counsel similar to what judge had with many members of local bar did not require recusal). See also *United States* v. *Balistrieri*, 779 F.2d 1191, 1204 (7th Cir. 1985), cert. denied sub nom. *DiSalvo* v. *United States*, 475 U.S. 1075 (1986) (judge did not abuse discretion in denying recusal motion and hearing was not required before another judge where affidavits considered together did not require recusal under 28 U.S.C. § 455[b][1] [affidavit including alleged remark of judge at social gathering had character of rumor or gossip, not specific as to time, place, or source, did not require recusal]).

[11]The affidavit from John Labadini, former manager of the Charles Restaurant, states that he recalled seeing the judge and the plaintiff's lead attorney sitting at a table on at least two occasions ("for conversation and drinks"). Labadini's employment was terminated on March 31, 1997, when the restaurant was closed.

tendant.[12] While we emphasize that even this limited social contact between a judge and a lawyer appearing before her is to be discouraged, we think it not advisable to promulgate a rule that every chance meeting or a public social discussion between judge and lawyer requires an evidentiary hearing before another judge to ascertain whether anything occurred that might lead one reasonably to question the impartiality of the judge. See *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981) (charge of partiality must be supported by factual basis and judge must ignore rumors, innuendos, and erroneous information).

We conclude the denial of the recusal motion was not erroneous considering that it was the second recusal motion coming at the end of complex litigation decided against the moving party, with no substantial justification for its lack of timeliness, where the defendants had some of the information at their disposal for as much as fifteen months, and where the defendants' affidavits taken at face value were insufficient to establish a reasonable basis for questioning the judge's impartiality. In sum the defendants' motion offers too little, too late. We affirm the judge's denial of the motion to recuse.

2. *The supplemental judgment.* In *Demoulas I, supra* at 556, we decided:

> "[S]ome revision of the ordered relief [was] necessary to ensure that the defendants [were] not being required to repay more than their actual gains. In particular, the defendants should be given credit for any investments that they have personally made in the affected companies and for any taxes on those companies' profits that they were required to pay. The defendants bear the burden of proving that they are entitled to such credits. . . . Where a corporate fiduciary obtains a gain or advantage through a violation of his duty of loyalty, a court may properly order restitution of the gain, so as to deny any profit to the wrongdoer and prevent his unjust enrichment. See *Broomfield* v. *Kosow*, 349 Mass. 749, 758 (1965); *Production Mach. Co.* v. *Howe*, 327 Mass. 372, 377-378 (1951); *Durfee* v. *Durfee & Canning, Inc.*, 323 Mass. 187, 198 (1948)."

---

[12]John Labadini stated that, on at least two occasions, the plaintiff's lead attorney and the judge were alone together outside the restaurant under an awning for ten to fifteen minutes.

We then remanded the case to the trial court to afford the appropriate relief pursuant to our instructions. On remand, the judge entered a supplemental judgment which granted the defendants a credit for the taxes paid by the defendants on the earnings of the business entities. The judge did not make specific findings regarding the credits in this supplemental judgment to which the defendants were entitled for investments they made in the companies.

(a) *Deductions for payments of future Federal and State income taxes.* The defendants now argue that the supplemental judgment was in error because it failed to provide the defendants with a credit for any additional taxes paid. We agree.

In *Demoulas I*, we stated that the defendants should be allowed to deduct their tax payments, recognizing "[w]here a corporate opportunity has been wrongfully diverted or a trade secret misappropriated, we have required the transgressor to repay only net profits, not the gross income from sales." *Demoulas I, supra* at 558, citing *Jet Spray Cooler, Inc.* v. *Crampton,* 377 Mass. 159, 174 n.14 (1979); *Durfee* v. *Durfee & Canning, Inc., supra* at 203-204. "We have recognized that, where such a deduction is allowed for taxes, it will be necessary to track *any* tax benefits received by a defendant resulting from repayments made to a plaintiff . . . . Otherwise unjust enrichment would still occur." (Emphasis added). *Demoulas I, supra,* quoting *USM Corp.* v. *Marson Fastener Corp.* 392 Mass. 334, 346-347 (1984).

The tax credits granted to the defendants were based on the estimated taxes paid on estimated earnings for 1997, rather than actual 1997 earnings.[18] An audit of the companies by the taxing authorities may result in changes of prior years' earnings causing the individual defendants to pay additional amounts for prior tax years. The theory of unjust enrichment requires that the defendants not repay to the plaintiff more than their actual gains, and that DSM be required to credit or to pay the defendants the amount of any additional taxes due as a result of the actual earnings or an audit.

---

[18]The defendants state that the tax returns for Market Basket and 231 Realty Associates have now been prepared and reflect that additional payments are owed. They state that the individual defendants' tax liability on account of the actual earnings of the companies for the 1997 tax period is approximately $3,200,000 greater than the estimated taxes paid prior to the entry of the supplemental judgment.

(b) *The defendants' investments in the affected companies.* The defendants also contend that the judge erred in failing to provide a provision in the supplemental judgment regarding investment credits. They argue that the twenty-eight million dollar investment credit should be transferred from the stock transfer action to this shareholder derivative action.[14]

The plaintiff, on the other hand, points out that the judge had already amended the judgment in the stock transfer action,[15] on February 26, 1997, to grant the defendants a credit for their investments in usurped corporate opportunities.

This case is remanded to the Superior Court to make a provision in the supplemental judgment requiring DSM to reimburse the defendants for payment of future taxes, if any, or to pay the taxes directly. The investment credit has adequately been treated in the amended judgment of February 26, 1997, in the stock transfer action. We affirm the judgment of the denial of the recusal motion and the denial of the motion for relief from judgment.

*So ordered.*

---

[14]The defendants argue that, if the judgment in the stock transfer action is reversed on appeal, the entire investment credit would disappear, leaving DSM unjustly enriched over twenty-eight million dollars. They also argue that the plaintiff suffers no harm if we decide to transfer the investment credit from the stock transfer action to this case. Additionally, they argue that, if we decline to transfer the investment credit to this action, they request that the execution on the supplemental judgment be stayed until all the proceedings in the stock transfer action are concluded.

[15]Paragraph 6 of the judgment states: "The parties agree that Defendant Children invested a total of $28,205,000 of their DSM and Market Basket Subchapter S distributions in DSM related entities. Equitable considerations entitle Defendant Children to a credit for these investments. Because DSM and its shareholders are the beneficiaries of these investments, DSM shall reimburse Defendant Children."