van Gestel, J.
The issue of this Court’s recusal has been in play in this case since October 2000. It has not been ignored by the Court, or the parties, but *181 rather has been addressed on each occasion raised. In the meantime, this Court decided two issues on partial summary judgment and, after reporting that decision to the Appeals Court, the SJC granted direct appellate review and affirmed this Court’s decision. See Goldstein v. Savings Bank Life Insurance Company of Massachusetts, 435 Mass. 760 (2002). Ihe case has since been remanded to this Court for further action; and the recusal issue has been raised again.
Counsel for the plaintiffs now has set forth, for the first time, a position that, on its face at least, has merit regarding the issue of whether Canon 3(C)(1)(b) of the Code of Judicial Conduct mandates this Court’s recusal. The defendant was given until April 4, 2003, to file a response to the plaintiffs’ recent filing. It has done so; and the plaintiffs, on April 14, 2003, submitted a sur-reply.
“The matter of recusal is generally left to the discretion of the trial judge . . .” Haddad v. Gonzalez, 410 Mass. 855, 862 (1991). See also Demoulas v. Demoulas Super Markets, Inc., 428 Mass. 543, 546 n.5 (1998).
Faced, then, with a question of his capacity to rule fairly, the judge was to consult first his own emotions and conscience. If he passed the internal test of freedom from disabling prejudice, he must next attempt an objective appraisal of whether this was “a proceeding in which his impartiality might reasonably be questioned.”
Lena v. Commonwealth, 369 Mass. 571, 575 (1976). See also Demoulas v. Demoulas Super Markets, Inc., supra, 428 Mass. at 546 n.6; Commonwealth v. Gogan, 389 Mass. 255, 259 (1983). “(I]f, after applying the two-part test of S.J.C. Rule 3:09, Canon 3(C)(1), a judge finds that he should disqualify himself under either part, he must allow the motion.” Parenteau v. Jacobson, 32 Mass.App.Ct. 97, 104 (1992).
Although stated by a Federal judge, the proposition seems equally sound in Massachusetts: “There is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is.” In re Union Leader Corp., 292 F.2d 381, 391 (1st Cir. 1961). See also, Edinburg v. Cavers, 22 Mass.App.Ct. 212, 217 (1986); Blizard v. Fielding, 454 F.Sup. 318, 323 (D.Mass. 1978).
The plaintiffs rely on S.J.C. Rule 3:09, Canon 3(C)(1)(b), of the Code of Judicial Conduct. In material part for these purposes, the cited Canon reads:
(1) Ajudge should disqualify himself in aproceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(b) ... in the matter of controversy, ... a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter . . .
What is meant by “the matter of controversy?” At an earlier time, this Court asked itself whether those words mean the litigation and trial of the case before the Court, or do they relate more broadly to the underlying legal or factual issues that are or may be the subject of the litigation?
In assessing the objective test of whether its “impartiality might reasonably be questioned” in an instance where lawyers “with whom [the Court] previously practiced law [may have] served during such association as . . . lawyer[s] concerning the matter” of controversy the Court reached the following conclusions:
There is no doubt that, on the facts agreed to by all parties here — and the Court — Goodwin, Procter & Hoar lawyers, while this Court was a partner at that firm, represented SBLIC on numerous matters. Indeed, counsel for SBLIC at oral argument . . . suggested that Goodwin, Procter & Hoar’s role was sufficiently extensive as to permit it to be described as “close to outside general counsel.”
There is also no doubt that this Court was unaware of Goodwin, Procter & Hoar’s representation of SBLIC when it was a partner in that firm and does not today know whether Goodwin, Procter & Hoar was in any way involved “in the matter of controversy.”
Memorandum dated November 21, 2000, pp. 8-9.
The Court, without really deciding the issue then, accepted for purposes of its analysis that the controlling parameters of the “matter of controversy” extend beyond just the present litigation. In other words, the answer to the recusal question cannot be resolved by simply examining the docket to see if Goodwin, Procter & Hoar, or any of its lawyers, has filed an appearance in this case. The Court continues to believe that assessment is correct.
That is not to say, of course, that the reach of the words can go so far as to incorporate just any representation of SBLIC of any kind by Goodwin, Procter & Hoar during the time that this Court practiced law at that firm. The representation, in order to trigger the recusal of the Court, must be of a kind that directly and substantially relates to the case in controversy.
The defendant argues that all of Goodwin, Procter’s communications with its client, SBLIC, are protected by the attorney-client privilege and none will be presented by the defendant in this case. Indeed, according to the defendant, none of those communications will have any effect on the matters that remain to be resolved. A paragraph at the bottom of the second page of the Defendant’s Reply to Plaintiffs’ Response Regarding Recusal Issues captures the essence of the defendant’s position. It reads:
However, none of the legal advice rendered by Goodwin over the years, including advice that Goodwin may have rendered on Second Century issues, will *182 be relied on or introduced as evidence in the pending litigation. The documents containing the work of Goodwin and its communications are not subject to discovery. They are clearly protected by the attorney client privilege. Further, to the extent the new allegations made by the plaintiffs involve issues on which Goodwin may have rendered advice, they are also covered by the work product doctrine. These documents are not discoverable, will not constitute evidence in this case, and will not be presented by either pariy to this Court for consideration.
Would that it were this simple to resolve. Unfortunately, this Court reads Canon 3(C)(1)(b) as directed otherwise. The Canon does not say that the judge must only recuse himself if his former partners’ advice can be made public; in other words, is not protected by the attorney-client or some other privilege or doctrine. Rather, the mere fact that “a lawyer with whom [the judge] previously practiced law served during such association as a lawyer concerning the matter” in issue is the recusal-triggering event. (Emphasis added.) The judge does not even have to know that such service occurred, let alone be exposed to the confidential advice or communications.
There is now on the present record a prima facie showing that lawyers with which this Court was associated in practice served SBLIC on some of the matters in issue. That is enough to enable a reasonable man in the street to come to the conclusion that it would be improper for this Court to act thereon. Consequently, this Court should not act further on this case.
This Court “has [exercised its] duty to resist a challenge to its impartiality,” Police Commr. of Boston v. Municipal Court of the W. Roxbury Dist., 368 Mass. 501, 508 (1975), and the challenge is no longer tenuous. The plaintiffs have brought forth enough — and defendant has not effectively proffered an opposition— to cause this Court, with great reluctance, to recuse itself from further action in this case.
Upon the filing of this Order the matter will be transferred to Justice Botsford for further action. Hereafter, all parties must include the initials “BLS2" at the end of the docket number on all filings. Also, Judge Botsford’s name must be included.