IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-019

Filing Date: May 31, 2011

Docket No. 32,422

INQUIRY CONCERNING A JUDGE
NO. 2009-081

IN THE MATTER OF ROBERT MERLE SCHWARTZ,
District Court Judge, Bernalillo County, New Mexico

Randall D. Roybal
Albuquerque, NM

for Judicial Standards Commission

Kennedy & Han, P.C.
Paul John Kennedy
Albuquerque, NM

for Respondent

## OPINION

**PER CURIAM.**

**{1}** This case comes before us on a petition for discipline filed by the Judicial Standards Commission (Commission). After briefing and at the conclusion of oral argument, we announced our decision from the bench to adopt the Commission's recommendations that Judge Robert M. Schwartz receive a formal public reprimand for committing willful judicial misconduct in violation of our Code of Judicial Conduct, complete a course regarding sexual harassment, and take appropriate leave from work during all future medical transitions. We rejected the Commission's recommendation that Judge Schwartz be suspended for sixty days without pay and announced that Judge Schwartz would be required to pay a fine of $6,000. We subsequently entered an order memorializing our decision, and we now issue this Opinion to further explain our decision and provide guidance for future cases.

## BACKGROUND

**{2}** The willful judicial misconduct at issue in this case arose by Judge Schwartz's untimely recusal after initiating a romantic relationship with an assistant public defender

1

who had cases pending before him and making dishonest statements from the bench concerning his reasons for recusing. We adopt the following findings of fact made by the Commission. Judge Schwartz was appointed to the bench in the Second Judicial District in March 2008. He was subsequently elected to the position in a contested election in the same year, and he serves in the Criminal Division where he routinely handles a caseload of over 1,000 criminal cases. Before being elected to the court, Judge Schwartz held several prominent positions, including District Attorney for the Second Judicial District, legal correspondent for television news, newspaper columnist, Commissioner for the Public Utility Commission, and Senior Criminal Justice Policy Advisor to former Governor Richardson. In addition, Judge Schwartz performed stand-up comedy and hosted various charity banquets and dinners.

{3}     Judge Schwartz has had a collegial relationship with attorneys who have practiced before him, and after completing business for the day he often engaged in brief friendly conversations, which sometimes included jokes. In the spring of 2009, Judge Schwartz changed medications for a serious medical condition, which resulted in a difficult time in his life. He testified, however, that he was physically and mentally capable of performing his judicial duties. During this period, a female assistant public defender, who was relatively new to the practice of law, regularly appeared in his courtroom. Judge Schwartz thought this assistant public defender had a quick wit, and he believed she shared his interest in comedy and humor. This assistant public defender was not employed or supervised by Judge Schwartz, but as a judge, he was in a position of authority over her in his courtroom and decided if she won or lost cases. On Thursday, July 9, 2009, Judge Schwartz invited her to lunch the following day.

{4}     On Friday, July 10, 2009, Judge Schwartz drove the assistant public defender to a local take-out restaurant and they ate lunch together in a public park across the street. Judge Schwartz did not believe he had to recuse in the assistant public defender's cases before having lunch with her because, as long as they did not discuss cases, judges and lawyers may have lunch together. Judge Schwartz did not extend a lunch invitation to any other attorney scheduled to appear before him the next week. Furthermore, the lunch with the assistant public defender was not a professional lunch. Although Judge Schwartz doubted that a romantic relationship would develop, given the difference in their ages, he was open to the possibility. Judge Schwartz testified that they "just clicked" and had made each other laugh.

{5}     At some point during the lunch Judge Schwartz gave the assistant public defender a gift of a pair of purple latex gloves and a book written by an author with the same name as Judge Schwartz, entitled, "The One Hour Orgasm." The gift was intended by Judge Schwartz and understood by the assistant public defender to be a self-deprecating joke because the author and Judge Schwartz shared the same name. Before he became a judge, Judge Schwartz had given this book to others, whose common reaction was to burst out laughing. When the assistant public defender returned to work, she showed her supervisor the joke gift. During the afternoon following the lunch, Judge Schwartz and the assistant public defender spoke on the phone, and Judge Schwartz obtained the assistant public

defender's personal phone number so he could contact her outside the office. He did not, however, recuse from her cases, even though he had the opportunity to do so.

{6} The following day, a Saturday, the assistant public defender called Judge Schwartz and offered to cook a meal for him at his house. Judge Schwartz suggested that they instead attend a concert in Santa Fe. At the concert, the assistant public defender drank two glasses of wine; Judge Schwartz did not drink any alcoholic beverages. During the drive back to Albuquerque, the assistant public defender asked Judge Schwartz if he thought he could be fair and impartial in her cases, and he replied that he did not think he could be and would recuse from her cases. Believing that Judge Schwartz would recuse on all her cases, the assistant public defender then called her supervisor, leaving a phone message regarding the Judge's planned recusal from her cases. Upon returning to Albuquerque, they stopped at the Albuquerque Press Club. They then drove to the assistant public defender's apartment, where Judge Schwartz parked his car before they walked to a local bar. After spending about an hour and a half at the bar, an acquaintance of Judge Schwartz gave them a ride back to the assistant public defender's apartment. With her permission, Judge Schwartz kissed the assistant public defender goodnight and left. He admitted that he had begun a personal relationship with the assistant public defender, although he was not sure of its future. Judge Schwartz spoke to her the following day about the time they had spent together on Friday and Saturday.

{7} On Monday, July 13, 2009, Judge Schwartz called his office to report that he was sick and asked his administrative assistant to move his cases scheduled for that day to the following day. He could not remember which of the assistant public defender's cases were scheduled for that day. He did not, however, tell his assistant that he would be recusing from the assistant public defender's cases or ask his assistant to prepare notices of recusal. In the evening, he met with the assistant public defender at a nearby park, told her he intended to recuse from her cases, and they discussed the effects of recusal on her work, including her reassignment to a different trial team.

{8} When Judge Schwartz returned to work the next day, Tuesday, July 14, 2009, the assistant public defender remained listed as counsel for two of the rescheduled cases on his docket, and he again failed to recuse from those cases prior to the docket call. In one of those cases, the assistant public defender's supervisor substituted for her. During the hearing on the matter argued by the supervisor, Judge Schwartz announced, without providing reasons, that he would be recusing from that case and the other case in which the assistant public defender was involved.

{9} After Judge Schwartz announced that he would recuse in these two cases, however, he provided dishonest reasons for his recusal and entered rulings in both cases. In the case in which the assistant public defender was still representing the defendant, Judge Schwartz said he was uncertain that his initial denial of a defense motion to dismiss was correct, and he announced that he was going to withdraw his order. In the other case, when the attorneys persisted in arguing an issue to him, he stated that he wanted another judge to make a ruling

3

on a technical, legal issue and would "like to hear some guidance" from the Court of Appeals. He then granted an uncontested motion to release the defendant on his own recognizance. He did not mention his relationship with the assistant public defender as grounds for recusing in either case although he later admitted to the Judicial Standards Commission that his primary reason for recusing was that relationship, and that the assistant public defender and others in her office knew the true reason for the recusal.

{10} There is no evidence of any adverse impact on these cases from the recusals. Both cases from which Judge Schwartz recused were resolved in a timely manner. The relationship with the assistant public defender ended, and following a trial that ended in August, Judge Schwartz took voluntary medical leave while the Commission obtained an independent medical examination of his condition. The chief judge of the Second Judicial District testified that, apart from this one incident that took place over several days, he had received no complaints about Judge Schwartz's conduct, and said that he considered him "a very valuable member of the court." The Commission also found that although his reasons for recusal were not credible, Judge Schwartz had been forthcoming and candid with the Commission, apologized for his conduct, and expressed a desire and willingness to learn from his mistakes.

{11} Based on these facts, the Commission concluded that Judge Schwartz violated the following rules: Rule 21-100 NMRA (upholding the integrity and independence of the judiciary); Rule 21-200(A) NMRA (requiring that a Judge shall "act in a manner that promotes public confidence in the integrity and impartiality of the judiciary"); Rule 21-400(A)(1) NMRA (requiring disqualification where impartiality might reasonably be questioned); and Rule 21-500(A)(1)-(4) NMRA (requiring a judge to conduct extra-judicial activities to minimize conflict with judicial obligations). The Commission also concluded that Judge Schwartz committed willful misconduct in office. The Commission recommended that Judge Schwartz be suspended for sixty days without pay, receive this formal reprimand, complete a course regarding sexual harassment, take leave during any future transitions in medication, and pay the Commission's recoverable costs and expenses. After hearing oral argument, this Court adopted the findings and conclusions of the Commission, but modified the recommended discipline, imposing a fine in place of suspension.

**DISCUSSION**

{12} Article VI, Section 32 of the New Mexico Constitution provides that judges may be disciplined only for "willful misconduct in office." "[Willful] misconduct in office is improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly, and, generally, in bad faith. It is more than a mere error of judgment or an act of negligence." *In re Locatelli*, 2007-NMSC-029, ¶ 8, 141 N.M. 755, 161 P.3d 252 (per curiam) (internal quotation marks and citation omitted). Thus, while violations of the Code of Judicial Conduct "furnish some proof of what constitutes appropriate judicial conduct,"

4

in order to warrant discipline, those violations must be willful. *In re Martinez*, 99 N.M. 198, 204, 656 P.2d 861, 867 (1982).

**STANDARD OF REVIEW**

{13}     When called on to discipline a judge, we undertake an independent evaluation of the record to determine whether clear and convincing evidence supports the Commission's recommendation, but in so doing "we may give weight to the evidentiary findings of those who were able to judge credibility." *In re Castellano*, 119 N.M. 140, 149-50, 889 P.2d 175, 184-85 (1995) (per curiam). Clear and convincing evidence is evidence that "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Joseph M.*, 2006-NMCA-029, ¶ 15, 139 N.M. 137, 130 P.3d 198 (internal quotation marks and citation omitted). "There need not be clear and convincing evidence to support each and every one of the Commission's evidentiary findings. Rather, we must be satisfied by clear and convincing evidence that there is willful judicial misconduct which merits discipline." *In re Castellano*, 119 N.M. at 149, 889 P.2d at 184. We review conclusions of law and recommendations for discipline de novo. *In re Griego*, 2008-NMSC-020, ¶ 7, 143 N.M. 698, 181 P.3d 690 (per curiam).

**FINDINGS AND CONCLUSIONS**

{14}     Judge Schwartz does not indicate which of the Commission's findings to which he specifically objects, but states only generally that he objects to findings inconsistent with his own proposed findings. In general, this Court presumes the fact finder is correct, and the burden is on appellant to point out clearly how the fact finder allegedly erred. *Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 111 N.M. 6, 8, 800 P.2d 1063, 1065 (1990); *see also In re Griego*, 2008-NMSC-020, ¶ 7 (citing *Stueber v. Pickard*, 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991) (unchallenged findings are binding on the parties on appeal)). Our review of the record in this matter, however, shows that the findings relevant to our decision are supported by clear and convincing evidence. We agree with the Commission that the evidence supports the Commission's conclusions that Judge Schwartz violated Rule 21-100 (upholding the integrity and independence of the judiciary), Rule 21-200(A) (requiring that a Judge shall "act in a manner that promotes public confidence in the integrity and impartiality of the judiciary"), Rule 21-400(A)(1) (requiring disqualification when a judge's impartiality might reasonably be questioned), and Rule 21-500(A)(1)-(4) (requiring a judge to conduct extra-judicial activities to minimize conflict with judicial obligations), and that he committed willful misconduct in office.

{15}     Specifically, we agree that the evidence supports a conclusion that Judge Schwartz violated Rule 21-400(A)(1), which states that a judge should recuse from a case if his impartiality might be reasonably questioned. The evidence in this case revealed that, by Saturday evening, on July 11, 2009, after Judge Schwartz and the assistant public defender had attended a concert in Santa Fe, had drinks in Albuquerque together, and had kissed,

5

Judge Schwartz "thought the relationship was progressing to a point where there was a possibility of a romantic connection." The evidence also revealed that on Saturday evening he told the assistant public defender that he "decided to enter a blanket recusal."

**{16}** In *State v. Riordan* we held that, under Rule 21-400(A), "[a] judge is disqualified and shall recuse himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned[.]" 2009-NMSC-022, ¶ 8, 146 N.M. 281, 209 P.3d 773 (per curiam) (alterations in original) (internal quotation marks and citation omitted). Failure to recuse under such circumstances results in actual impropriety or an appearance of impropriety, which, in turn, violates Rule 21-200. In the context of personal relationships, recusal is specifically required under Rule 21-400(A)(5)(b) of our Code of Judicial Conduct when "the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person . . . is acting as a lawyer in the proceeding." Under such circumstances the judge's impartiality "might reasonably be questioned." Rule 21-400(A).

**{17}** The list of instances provided in the rule when recusal is required is not exclusive, and the rationale for requiring recusal in cases involving family members also applies when a close or intimate relationship exists because, under such circumstances, the judge's impartiality is questionable. *See* Rule 21-400(A); *see, e.g., In re McBee*, 2006-NMSC-024, ¶ 13, 139 N.M. 482, 134 P.3d 769 (per curiam) (stating that continuing to preside over a case in which the judge had a personal relationship with the defendant's attorney, who was the defendant's boyfriend, fostered an appearance of impropriety). The gift of a book with a sexual title suggests a level of intimacy in the relationship, at least in the mind of the donor, which, at the very least, raises questions about whether Judge Schwartz could be impartial in proceedings involving the assistant public defender who received the gift, even if the gift was perceived as a joke. Moreover, it is reasonable to infer from Judge Schwartz's desire to obtain the assistant public defender's personal phone number so that he could contact her outside the office, that he was looking for more than a casual social relationship, something the Judge appears to confirm in this instance. We are not suggesting that a judge is prohibited from becoming romantically involved with an attorney, but before initiating such a relationship the judge must terminate any professional relationship by recusing from any cases in which an attorney is or has been involved.

**{18}** We agree that a judge's impartiality will not normally be questioned merely because a judge has a social relationship with an attorney. *See, e.g., Demoulas v. Demoulas Super Markets, Inc.*, 703 N.E.2d 1141, 1147 (Mass. 1998) (stating that not every public social discussion between a judge and a lawyer requires an evidentiary hearing to determine whether the judge's impartiality can be questioned). When, however, that relationship becomes something more than casual social interaction, and involves sexual jokes and the desire for a romantic relationship, then it raises reasonable questions about the judge's ability to be impartial. Judges are not barred from associating with attorneys, but as we have stated in *In re Romero*, "[t]he conduct prescribed for judges and justices is more stringent than conduct generally imposed on other public officials." 100 N.M. 180, 183, 668 P.2d 296, 299

6

(1983). In this case, Judge Schwartz acknowledged that recusal was required but failed to do so in a timely manner. Accordingly, we determine that the facts as found by the Commission support the conclusion that Judge Schwartz failed to recuse in a timely manner and violated Rule 21-400(A)(1).

{19} Not only did Judge Schwartz fail to recuse in a timely manner, he also made rulings in some cases after announcing his intention to recuse. In one of the cases, he claimed that he had concerns about the correctness of an earlier ruling and announced that he was withdrawing his earlier ruling. In a second case, Judge Schwartz entered a ruling on a motion for pretrial release. As the Commission pointed out, a judge has no authority to take action in a case after announcing recusal. Once Judge Schwartz acknowledged that he was disqualified from hearing the two cases he could not reinsert himself into the proceedings. *See In re McBee*, 2006-NMSC-024, ¶ 14 (pointing out that a judge's reinserting himself into proceedings after announcing an intent to recuse displayed "an ignorance of, or indifference to, basic judicial responsibilities embodied in our Code of Judicial Conduct").

{20} In addition, Judge Schwartz's failure to recuse in a timely manner led to further problems. Had he recused in the afternoon on Friday, July 10, or even on Monday, July 13, he could have done so simply—issuing straightforward notices of recusal that contained no reasons for the action. *See Gerety v. Demers*, 92 N.M. 396, 400, 589 P.2d 180, 184 (1978) (observing that reasons for recusal may be personal and a judge need not state them). Instead, when he took the bench on Tuesday and had two of the assistant public defender's cases on his docket, he justified his recusals by stating that he was concerned that his rulings in the cases were incorrect, and that he wanted a different judge to review the issues.

{21} The Commission found these are not credible reasons to recuse. We agree. A judge has a duty under Rule 21-300(B)(1) NMRA "to hear and decide matters assigned to the judge except those in which disqualification is required." *See Gerety*, 92 N.M. at 400, 589 P.2d at 184 ("[A] judge has a duty to perform the judicial role mandated by the statutes, and he has no right to disqualify himself unless there is a compelling constitutional, statutory or ethical cause for so doing."). Uncertainty about the correctness of a ruling is not one of the reasons listed in Rule 21-400. If a judge believes he or she has committed an error in a case, as Judge Schwartz claimed he may have done, recusal is not the remedy. A judge may reconsider an earlier ruling but must rule, as errors committed in the district court may be corrected on appeal. *See generally* Rules 12-101 to -608 NMRA. Judge Schwartz's stated reasons were not the real reason for his recusal, and in so doing his actions were disingenuous at the very least.

{22} Judge Schwartz initiated a relationship with an attorney who had cases pending in his court and gave her gifts which were inappropriate in that situation. Rule 21-500(A) requires that a judge be aware of his or her privileged position as a judge at all times. *See In re Romero*, 100 N.M. at 183, 668 P.2d at 299. Specifically, Rule 21-500(A) requires a judge to conduct extra-judicial activities so as not to raise questions about the judge's impartiality or reflect badly on the office. Moreover, extra-judicial activities must not

7

interfere with the judge's judicial duties or obligation to uphold the law. Rule 21-500(A)(3), (4). We agree with the Commission that this conduct violated Rule 21-500(A). Judge Schwartz's conduct reflected badly on the judicial office and cast doubt on his capacity to act impartially.

**{23}** We therefore agree with the Commission that Judge Schwartz violated Rule 21-100 and Rule 21-200, which contain the overarching and interrelated principles that inform our Code of Judicial Conduct and ensure the rule of law. Rule 21-100 provides that "[a] judge shall participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved." Similarly, Rule 21-200(A) requires judges to avoid impropriety and the appearance of impropriety, to "promote public confidence in the integrity and impartiality of the judiciary." Even though the gift of the book was given and received as a joke, because of its sexual nature it was an inappropriate gift for a judge to give to an attorney who practiced before him. We recognize that no allegations of sexual harassment were made in this case and that Judge Schwartz was not the assistant public defender's supervisor. However, Judge Schwartz was in a position of considerable authority, having power to rule in cases the assistant public defender argued before him. By giving a gift that was inappropriate for a judge to give an attorney practicing before him, by then failing to recuse in a timely manner, making rulings after having recused, and stating dishonest reasons for recusal, Judge Schwartz damaged the public's confidence in the integrity and impartiality of the judiciary.

**{24}** We also agree with the Commission that Judge Schwartz's actions were not simply negligent. Judge Schwartz acknowledged that he knew he was required to recuse from the assistant public defender's cases, but he had failed to do so in a timely manner and provided dishonest reasons for his recusal. He was also aware that he should not rule in cases from which he had recused. Judge Schwartz's actions constituted willful misconduct in office that warrant discipline. *See In re Locatelli*, 2007-NMSC-029, ¶ 8 (defining willful misconduct in office as official actions "done intentionally, knowingly, and, generally, in bad faith").

## RECOMMENDATIONS FOR DISCIPLINE

**{25}** In imposing discipline on judges, this Court looks "at such factors as the nature of the misconduct and patterns of behavior." *In re Garza*, 2007-NMSC-028, ¶ 26, 141 N.M. 831, 161 P.3d 876 (per curiam). We have applied the standard recommended in the ABA Model Code of Judicial Conduct (2007) (Model Code) that, when imposing discipline on judges, courts should consider "factors such as the seriousness of the transgression, the facts and circumstances that existed at the time of the transgression, the extent of any pattern of improper activity, whether there have been previous violations, and the effect of the improper activity upon the judicial system or others." Model Code scope ¶ 6. *See, e.g., In re Griego*, 2008-NMSC-020, ¶ 13.

**{26}** Judge Schwartz's conduct reflects poorly on the integrity of the judiciary. It is essential that judges "respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system." Model Code pmbl. ¶ 1. The violations of the Model Code, therefore, are serious. However, there is no evidence of a pattern of misconduct suggesting Judge Schwartz is a danger to the public: the misconduct addressed in this case occurred over several days, but then ended. Neither the State nor the defendants in the affected cases were prejudiced by the conduct, and no other complaints have been made against this judge. Moreover, while Judge Schwartz may have created fictitious reasons to explain his need to recuse, the Commission found that his testimony before the Commission was "forthcoming and candid," and he has acknowledged and apologized for his conduct. *Cf. In re Rodella*, 2008-NMSC-050, ¶ 36, 144 N.M. 617, 190 P.3d 338 (per curiam) (emphasizing that "when a judge denies making mistakes, he or she cannot learn from the mistakes, and there is little that can be done to correct the behavior").

**{27}** Under these circumstances, we adopt the Commission's recommendation that Judge Schwartz receive this formal reprimand. We also adopt the recommendations that he take appropriate leave during any future transitions in medical treatment, and that he receive training on the nature of sexual harassment. We reject, however, the Commission's recommendation that Judge Schwartz be suspended without pay and, instead, order him to pay a $6,000 fine. That fine shall be paid within sixty days of the date this Opinion is filed.

**COSTS**

**{28}** The Commission has submitted a request for the cost of depositions used at trial and for the cost of the transcripts. We will address the costs in a separate order. *See In re Rodella*, 2008-NMSC-050, ¶¶ 37-40 (explaining which of the Commission's costs are recoverable).

**CONCLUSION**

**{29}** For the foregoing reasons, we conclude that Judge Schwartz committed willful judicial misconduct and order the discipline as set forth in this Opinion. Judge Schwartz is ordered to pay the $6,000 fine within sixty days of the date this Opinion is filed, and the costs as determined by separate Order to be issued by this Court.

**{30}** **IT IS SO ORDERED**.

 

_____
**CHARLES W. DANIELS, Chief Justice**

 

_____
**PATRICIO M. SERNA, Justice**

 

_____

**PETRA JIMENEZ MAES, Justice**


_____

**RICHARD C. BOSSON, Justice**


_____

**EDWARD L. CHÁVEZ,  Justice**

**Topic Index for _In re Robert M. Schwartz_, Docket No. 32,422**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-AR | Appellate Review |
| AE-AP | Appellate Rules and Procedure |
| | |
| **JG** | **JUDGES** |
| JG-CC | Code of Judicial Conduct |
| JG-DS | Disqualification |
| JG-EX | Excusal or Recusal |
| JG-JA | Judicial Authority |
| JG-PC | Propriety of Conduct |
| | |
| **JM** | **JUDGMENTS** |
| JM-CS | Costs |