Elizabeth WEEKS, Plaintiff
and Appellant,

v.

Cerola Dansie CALDERWOOD, De-
fendant, Third Party Plaintiff
and Respondent,

v.

Constance E. Patton Zarbock,
Third Party Defendant
and Respondent.

No. 15671.

Supreme Court of Utah.

Jan. 25, 1979.

Craig M. Snyder, Provo, for Plaintiff-Appellant (Elizabeth Weeks).

Stephen G. Morgan, Salt Lake City, for Defendant-Respondent (Cerola Dansie Calderwood).

John M. Chipman, Salt Lake City, for Third Party Defendant-Respondent (Constance E. Patton Zarbock).

CROCKETT, Chief Justice:

Plaintiff Elizabeth Weeks sued to recover for personal injuries resulting from a chain-reaction collision when the car in which she was a passenger (herein called plaintiff's car) was rear-ended by a car driven by third party defendant Constance Zarbock, which itself had been rear-ended by defendant Cerola D. Calderwood. Under appropriate instructions to the jury, in response to interrogatories as to the operative and causative negligence, it found none against Zarbock, and 100 percent against defendant Calderwood and awarded plaintiff damages of $2,596.42.

No questions are raised herein concerning the finding of negligence and liability against defendant Calderwood. Plaintiff Weeks appeals attacking the insufficiency of the damages award.

The accident occurred in the early morning (about 7:30 a.m.) on February 1, 1974, as the cars referred to were proceeding northward onto the on-ramp of freeway I–15 at 45th South in Salt Lake City. It was dark and a light rain was falling. Plaintiff's car was traveling up the on-ramp when a truck in front of it came to a stop. Plaintiff's car also came to a stop, whereupon the defendant Calderwood's car, following the Zarbock car, struck the Zarbock car, propelling it into the plaintiff's car, forcing it into the stopped truck, and resulting in the personal injuries the plaintiff complains of, primarily to her neck, and causing recurring headaches thereafter.

On the subject of her damages, the plaintiff offered evidence of pain and suffering and the likelihood of its continuance, and also presented evidence of doctor bills, hospital and medical costs aggregating $2,596.42. As to the damages to be awarded, the form of verdict furnished the jury included this question:

What is the total amount of damages sustained by the plaintiff, Elizabeth Weeks, as a result of the accident? $_____.

The amount inserted in the blank was the figure above recited as plaintiff's evidence of special damages. The plaintiff moved for a new trial, or in the alternative for an additur to the verdict.

Upon due consideration of those motions, the trial court denied them and from that ruling the plaintiff appeals. Her argument is that the jury only awarded her special dam-

ages, and that where there is such an award there must necessarily be an award of general dam ages. She reasons that the jury's failure in that regard came about because the verdict form given to the jury did not differentiate between special and general damages.

It is to be conceded that the award to plaintiff of the same amount as the total amount of damages as her evidence was as to her special damages gives rise to some conjecture as to how the jury arrived at its total verdict. In analyzing this attack upon the jury verdict, the following observations are pertinent: the trial court gave adequate instructions to the jury that in the event they found liability they could make an award of general damages to compensate the plaintiff for bodily injuries, including pain and suffering, loss of future earnings and medical and other expenses including such future expenses, as well as loss of future earnings, if any they should so find. They were also correctly instructed that under our system it is their exclusive prerogative to judge the credibility of the evidence, including that which relates to both general and special damages, and that the jury should make such award as would compensate plaintiff for any such damage as she suffered from the defendant's negligence. It is further to be kept in mind that the jury was not necessarily obliged to accept plaintiff's evidence 100 percent, but was entitled to weigh it, along with all of the other evidence in the case, in arriving at their judgment as to what would justly compensate her for the damages caused her by the defendant.

It is our duty to recognize that prerogative; and there is no proper means by which we can presume to dissect the jury's deliberations and determine just what factors went into the composite of the verdict which they returned as their idea of the award which would thus do justice to the plaintiff. This is particularly so because her claims as to pain and suffering are necessarily largely subjective and difficult to appraise in precise money value.

Supplementary to what has just been said, and to be considered in combination therewith, it is the trial court's primary responsibility and prerogative to judge such an attack upon a jury verdict; and that when he has so considered and passed thereon, that adds some further solidarity to the verdict and judgment, and increases the reluctance of this Court to interfere therewith.[1]

There is yet another matter to be considered which we regard as of importance in arriving at our conclusion herein. At the time the verdict was returned, it was read and taken cognizance of by the court; and the jurors were individually polled as to their agreement therewith. The court then thanked them for their service and excused them. Meanwhile, plaintiff's counsel sat silently by and made no objection to the verdict until after the jury had left the courtroom. We have heretofore held that under such circumstances, the failure of a party to object to a jury verdict until after the jury has been dismissed, thus removing the possibility of having the jury sent out to further consider or correct its verdict, amounts to a waiver of right to do so.[2]

Plaintiff's contention that the claimed inadequate award of damages resulted from passion and prejudice or the consideration of improper extraneous matters is supported by an affidavit by plaintiff's attorney averring that during a recess he overheard remarks between two jurors concerning insurance or the lack thereof. The mere mention of the term "insurance" seems to trigger reaction in parties who are dissatisfied with a jury verdict. We have heretofore indicated that we do not regard its mere mention as all that explosive or necessarily prejudicial.[3]

The presumption is that jurors conscientiously perform their duties in accordance with their oath and have judged the

1. See *Prince v. Peterson*, 538 P.2d 1325 (Utah 1975) citing *Geary v. Cain*, 69 Utah 340, 255 P. 416.

2. Rule 47(r) U.R.C.P.; *Langton v. International Transport, Inc.*, 26 Utah 2d 452, 491 P.2d 1211.

3. *Robinson v. Hreinson*, 17 Utah 2d 261, 409 P.2d 121.

case according to the evidence presented in court and the law as stated in the instructions; and this presumption prevails in the absence of some definite and persuasive proof of misconduct from which there would be a substantial likelihood of a different result in the trial.[4] Added to this is the principle that the deliberations of the jury are not ordinarily subject to impeachment. We are not persuaded that the trial court abused the discretion which is his in rejecting the plaintiff's contention that there was inadequacy of the verdict which resulted from the jury considering extraneous and improper matter.

 Some complaint is also made that the instructions were repetitious and unduly emphasized the burden upon the plaintiff. Conciseness, clarity and the avoidance of repetition are of course to be desired. But due to the necessity of treating various aspects of a case, particularly where multiple parties are involved, it is sometimes difficult to avoid some repetition. Upon reading and considering the instructions as a whole, as the jury were correctly admonished they should be, we do not perceive anything in the instructions that would justify disturbing the verdict and judgment.

As a separate proposition, plaintiff also complains that the trial court should have awarded her interest on the amount of damages found in the verdict from the date of the injury. She places reliance on Sec. 78–27–44, U.C.A., 1953.[5] There are two difficulties with the plaintiff's position. The first is that the statute referred to did not take effect in its present form until January 1, 1975, eleven months after this accident; and that such statutes usually have only prospective and not retrospective effect, unless otherwise expressly stated,[6] and thus would not apply to this occurrence. The other is that ordinarily an award of general damages such as for pain and suffering accompanying an

injury does not bear interest until the adjudication of liability and the amount is determined. As has been indicated above, neither the trial court nor we have any basis for knowing with certainty what part of the award was for such special dam-ages. Therefore, we are not disposed to disagree with and upset the trial court's ruling in refusal to award plaintiff interest prior to the judgment.

The judgment is affirmed. The parties to bear their own costs.

WE CONCUR: RICHARD J. MAUGHAN, D. FRANK WILKINS and GORDON R. HALL, Justices.

STEWART, Justice, does not participate herein.

---

4. *Arellano v. Western Pacific Railroad Co.,* 5 Utah 2d 146, 298 P.2d 527.

5. 78–27–44. Personal injury judgments—Interest authorized.—In all actions brought to recover damages for personal injuries ... resulting from ... tort, ... it shall be lawful for the plaintiff in the complaint to claim interest on the special damages alleged from the date of the occurrence

of the act ... and it shall be the duty of the court ... to add to the amount of damages assessed by the verdict of the jury, ... interest on that amount calculated at 8% per annum from the date of the occurrence....

6. *In re Ingraham's Estate,* 106 Utah 337 148 P.2d 340.