656 P.2d 861

**In the Matter of Donaldo A. MARTINEZ, District Judge.**

No. 14237.

Supreme Court of New Mexico.

Sept. 29, 1982.

On Rehearing Dec. 29, 1982.

David Gardner, Executive Secretary, James L. Brandenburg, Examiner, Judicial Standards Com'n, Albuquerque, for Com'n.

Donaldo A. Martinez, Las Vegas, pro se.

James M. Scarborough, Espanola, Albert J. Rivera, Jack Whorton, Alamogordo, for respondent.

## OPINION

EASLEY, Chief Justice.

Numerous complaints of judicial misconduct were made to the New Mexico Judicial Standards Commission regarding Fourth Judicial District Judge Donaldo A. Martinez. After an investigation and an extensive hearing, the Commission filed its recommendation in this Court that Judge Martinez be permanently removed from office for willful misconduct. We affirm the decision of the Commission that Judge Martinez is guilty of willful misconduct in office, but assess the penalty at temporary suspension.

The principal issues are whether it was willful misconduct in office:

(a) for Judge Martinez knowingly to countermand Judge Angel's orders for two prisoners to be immediately transported to the state penitentiary;

(b) for Judge Martinez to order that the district attorney, who is also the children's court attorney by statute, be denied the right to perform his duties in children's court cases;

(c) for Judge Martinez to issue a temporary restraining order on motion of his son when the motion did not comply with the rules, no notice was given to the opposite parties, and no hearing was held.

Other issues raised by the Judge will be treated summarily.

It bears emphasizing that when the Commission filed its report and recommendations in this Court, it dropped, because of failure of proof, many charges against Judge Martinez that had been highly publicized. As to one other charge involving Esteban Martinez's practicing before his father, the Commission admitted on oral argument that this charge, by itself, would not constitute willful misconduct.

This Court is strictly confined to the charges made in the "Report to New Mexico Supreme Court" filed by the Commission and to charges of willful misconduct. The issues are very limited and very narrow, and the evidence produced as to each dispositive issue is clear and convincing. However, the charges before this Court are a small fraction of those that were originally made.

The Judicial Standards Commission investigated the charges against Judge Martinez, held a hearing, and made its recommendations to this Court under the authority of article VI, section 32 of the New Mexico Constitution, which provides that any judge may be disciplined or removed from office "for willful misconduct in office."

The Commission found and concluded that Judge Martinez was guilty of willful misconduct in office in that he countermanded orders of Judge Angel, he banned the children's court attorney from performing his statutory duties, he permitted his son to practice before him without complying with the rules, and he signed a temporary restraining order for his son, which was beyond his authority to do.

Judge Martinez contests the charges and the recommendation of the Commission that he be removed from office.

(a) *Countermanding Judge Angel's Orders.*

The Fourth Judicial District is served by two district court judges, Presiding Judge Joe Angel and Judge Martinez.

Lorenzo Flores and David Lopez (the defendants) were convicted of conspiracy and aggravated assault and battery on a Las Vegas police officer after trial by jury before District Judge Joe Angel. Judge Angel sentenced Flores and Lopez to confine-

ment in the New Mexico State Penitentiary for terms of eight and six years respectively. These convictions were appealed to the New Mexico Court of Appeals where they were affirmed. This Court subsequently denied a petition for writ of certiorari on July 27, 1981. On July 28, 1981, the mandate of the Court of Appeals was issued directing the clerk of the District Court of the Fourth Judicial District "to issue any commitment necessary for the execution of Judgment and Sentence . . . ."

The defendants Lopez and Flores were free on bond pending the outcome of their appeal. Junio Lopez, the father of one of the defendants, and a former Mayor of Las Vegas, State Senator, and long-time acquaintance of Judge Martinez, was the surety for both defendants on appeal bonds in the amount of $10,000.00 each.

Prior to the issuance of the mandate, Judge Martinez's son, Esteban Martinez, filed a motion for new trial in district court on behalf of Flores and Lopez, alleging the discovery of new evidence. This motion was filed on July 22, 1981.

Judge Angel instructed the office of the district attorney to advise him immediately upon the issuance of the mandate so that he could take steps to ensure the defendants would be confined under his previous judgment and sentence. On July 28, 1981, Judge Angel was informed that the Court of Appeals had issued the mandate, and on July 29, 1981, he caused warrants to be issued for the arrest and confinement of the defendants pending transportation to the penitentiary. He also ordered the clerk to issue commitment orders to the sheriff to take the defendants and deliver them to the penitentiary as soon as the clerk of the court received the mandate.

Lopez was arrested on the evening of July 29, 1981, and Flores surrendered to the sheriff of San Miguel County on July 30, 1981, some time during the morning hours.

On July 30, 1981, Judge Angel had travelled to Taos, New Mexico, where he was presiding in a case by designation of this Court.

The clerk of the district court received the mandate in the mail on July 30, 1981, and filed it at 9:55 a.m. The clerk issued commitment orders to the sheriff to transport Flores and Lopez to the penitentiary.

On the morning of July 30, 1981, a large number of relatives and friends of the defendants, including Junio Lopez and Esteban Martinez, congregated in the hallway of the second floor of the San Miguel County Courthouse in the vicinity of Judge Martinez's office. Judge Martinez informed Junio Lopez that he could not act on any motion or petition presented by Esteban Martinez because of their relationship. Joe Ulibarri, who shares offices with Esteban Martinez, presented a petition for writ of habeas corpus to Judge Martinez to delay the transfer of the defendants.

Judge Martinez examined the court file, which indicated (1) the defendants' conviction; (2) the affirmance of the conviction; (3) the mandate commanding the district court to issue a commitment; (4) that the motion for new trial had not been served on the district attorney; (5) no motion for release on bond pending disposition of the motion for new trial had been filed; (6) the commitment orders had been issued as required by the mandate; and (7) no motion to abate the commitment orders had been filed by the defendants.

Judge Martinez and Ulibarri discussed the possibility of delaying the transfer, and Judge Martinez advised Ulibarri where he could find forms in the Judge's former offices to aid in the preparation of a petition for writ of habeas corpus.

The sheriff was removing the defendants from the courthouse when he was stopped by Judge Martinez on the second floor. The Judge directed the sheriff to return the defendants to the jail on the third floor of the courthouse. Thereafter, Judge Martinez prepared and issued an order delaying the transportation of the defendants to the penitentiary. Counsel for the defendants had presented no written motion. No notice was given to the district attorney. There was not a hearing in which opposing views could be heard, even though the dis-

trict attorney's offices are located on the first floor of the courthouse.

Copies of the order were served upon the sheriff and the district attorney's office. The order was read to Judge Angel over the telephone whereupon he ordered the sheriff to proceed with the transportation of the defendants to the penitentiary forthwith.

Six minutes after the order delaying transportation of defendants was filed with the clerk of the district court at 2:50 p.m. on July 30, 1981, a petition for writ of habeas corpus was filed by Joe Ulibarri directed to the sheriff.

The sheriff again attempted to execute the commitment orders, and again, Judge Martinez stopped him in the hallway outside his office, served him with a writ of habeas corpus, and directed him to return Flores and Lopez to the jail. Judge Martinez took this action even though he knew that Judge Angel had ordered, in his telephone conversation with the sheriff and the office of the district attorney, that the defendants be immediately transported to the state penitentiary.

Judge Angel was again informed of the actions of Judge Martinez. He then directed the New Mexico State Police to assist the sheriff in transferring the defendants. This was accomplished after the sheriff filed an affidavit of disqualification against Judge Martinez in the habeas corpus proceedings.

Judge Angel subsequently heard and denied the motion for new trial, and the Court of Appeals affirmed. The habeas corpus proceedings were ultimately dismissed by order of the Honorable Samuel Z. Montoya, acting as a district judge pro tem by order of this Court.

Judge Martinez testified before the Commission that some time after the conviction of the defendants Flores and Lopez, but before the issuance of the mandate by the Court of Appeals, an unidentified young man came to his office and confessed that he had committed the crimes for which Flores and Lopez were convicted. Judge Martinez considered this to be a privileged communication. He testified that he did not inform Judge Angel, the office of the district attorney, or Larry Hill, the attorney representing Flores and Lopez.

In his brief, Judge Martinez argues that the matter had the "appearance of an administrative 'goof,' the issuance of an arrest warrant and commitment before the receipt and docketing of the mandate, and without notice to the defendants to submit or turn themselves in . . . ."

Judge Martinez had served as district attorney for the Fourth Judicial District for a number of years before becoming judge, during which time he operated from day to day under the various rules with which we are concerned here.

Rule 604(a) of the Rules of Appellate Procedure for Criminal Cases specifies that the commitment may issue at any time after "entry" of the mandate and that the filing of the mandate in the Court of Appeals constitutes entry. N.M.R.Crim.App. 604(a), N.M.S.A.1978.

With the issuance of the mandate, the district court was directed to issue the commitment orders. *See* Section 31–11–3, N.M.S.A.1978. Accordingly, the district court was not required to give notice to Flores or Lopez, their attorneys, or their bondsmen as a condition precedent to the issuance of the commitment order.

Under the Rules of Criminal Procedure, an individual has a qualified right to release pending a motion for a new trial, even after appellate affirmance of a conviction. N.M.R.Crim.P. 23(c), N.M.S.A.1978 (Repl.Pamp.1980); N.M.R.Crim.P. 45(c), N.M.S.A.1978 (Repl.Pamp.1980). Such right, however, can be invoked only by a timely motion for a new trial, and by a motion for release pending a motion for a new trial duly filed and served in the manner required by rule 23. N.M.R.Crim.P. 23, N.M.S.A.1978 (Repl.Pamp.1980). Since it did not appear that the motion for a new trial in the Flores case had been served upon the district attorney's office, or that any motion for release pending such motion for a new trial had been filed, the right to release under rule 23(c) had not properly been invoked on or before July 30, 1981.

There was no justification shown for the *ex parte* issuance of the order prepared and filed by Judge Martinez delaying the transfer of the defendants.

Also, the writ of habeas corpus did not allege that the defendants were committed or restrained by virtue of any final judgment, conviction, or decree of any competent tribunal, or by any execution thereon as required by statute. Section 44–1–5, N.M.S.A.1978. The file in the Flores case, which Judge Martinez admits that he examined, revealed that (1) the defendants were committed and restrained by virtue of a final judgment and conviction of a competent tribunal; (2) their motion for new trial had not been served on the district attorney; (3) no motion for their release pending the motion for new trial had been filed; (4) such motion had not been granted or denied by Judge Angel; and (5) no appeal had been taken from a denial of such motions.

■ Post-conviction proceedings must be invoked before habeas corpus may be sought. *See State v. Sisk,* 79 N.M. 167, 441 P.2d 207 (1968). Rules 23 and 45 of the Rules of Criminal Procedure permitted the defendants to file the motions for post-conviction and post-appeal relief with the district court. N.M.R.Crim.P. 23; N.M.R. Crim.P. 45, N.M.S.A.1978 (Repl.Pamp.1980). Section 39–3–3 of the New Mexico Statutes and rule 204 of the Rules of Appellate Procedure for Criminal Cases permitted them to appeal the denial of the relief to the Court of Appeals. Section 39–3–3, N.M.S. A.1978; N.M.R.Crim.App. 204, N.M.S.A. 1978. These measures were not pursued.

The scope of our review is clear from article VI, section 32 of the New Mexico Constitution, which provides.

The Supreme Court shall review the record of the proceedings on the law and facts ... and it shall order the discipline, removal or retirement as it finds just and proper or wholly reject the recommendation.

■ The Supreme Court makes its own independent decision on the merits. *See Wenger v. Commission on Judicial Performance,* 29 Cal.3d 615, 175 Cal.Rptr. 420, 630 P.2d 954 (1981).

There is no real dispute between the parties as to the definition of "willful misconduct." The first conclusion of law in the documents filed by the Commission in this Court provides:

(a) "Willful misconduct in office" consists of bad faith misconduct of a judge acting in his judicial capacity. Bad faith implies that the judge intentionally committed acts which he knew or should have known were beyond his lawful power or entails actual malice as the motivation for the judges' *ultra vires* act. Willful misconduct also encompasses acts within the lawful power of the judge for a corrupt purpose, *i.e.,* for any purpose other than the faithful discharge of his judicial duties. *Spruance v. Commission on Judicial Qualifications,* 13 Cal.3d 778, 119 Cal. Rptr. 841, 532 P.2d 1209, 1221 (1975).

In *Spruance* the court stated:

"[W]ilful misconduct" is ... unjudicial conduct committed in bad faith by a judge acting in his judicial capacity.... The term "bad faith" implies that the judge "intentionally committed acts which he knew or should have known were beyond his lawful power."... As so used, "bad faith" entails actual malice as the motivation for the judge acting ultra vires. The requisite intent must exceed mere volition; negligence alone, if not so gross as to call its genuineness into question, falls short of "bad faith." "Bad faith" also encompasses acts within the lawful power of a judge which nevertheless are committed for a corrupt purpose, i.e., for any purpose other than the faithful discharge of judicial duties. In sum, "bad faith" is quintessentially a concept of specific intent, requiring consciousness of purpose as an antecedent to a judge's acting maliciously or corruptly.

13 Cal.3d at 795–96, 119 Cal.Rptr. at 853, 532 P.2d at 1221 (citations omitted) (quoting *Geiler v. Commission on Judicial Standards,* 10 Cal.3d 270, 283–284, 286, 515 P.2d 1, 9, 11, 110 Cal.Rptr. 201, 209, 211 (1973).

In the case of *In re Nowell,* 293 N.C. 235, 248, 237 S.E.2d 246, 255 (1977), the court stated:

*Wilful misconduct in office* is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith. [Citations omitted.] [Emphasis in original.]

The Supreme Court of North Carolina, in *In re Edens,* 290 N.C. 299, 305, 226 S.E.2d 5, 9 (1976), stated:

Wilful misconduct in office is improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally, in bad faith. It is more than a mere error of judgment or an act of negligence. While the term would encompass conduct involving moral turpitude, dishonesty, or corruption, these elements need not necessarily be present.

*See also McCartney v. Commission on Judicial Qualifications,* 12 Cal.3d 512, 526 P.2d 268, 116 Cal.Rptr. 260 (1974); *In re Haggerty,* 257 La. 1, 241 So.2d 469 (1970).

■ We must also consider the standard of proof to be applied in these cases. Should we apply the standard of proof beyond a reasonable doubt, as in criminal cases, or the preponderance of the evidence, as in civil cases? We are impressed by and adopt the reasoning of the Alaska Supreme Court in the case of *In re Hanson,* 532 P.2d 303 (Alaska 1975), in which the court rejected both those standards. Instead, the court adopted the standard of clear and convincing evidence, stating: " '[T]he serious nature of the proceeding in depriving one of a public office . . . ought to, at the very least to require proof by clear and convincing evidence.' " *Id.* at 308 (quoting *In re Laughlin,* 153 Tex. 183, 190, 265 S.W.2d 805, 809 (1954)).

■ Matching the facts and circumstances here with the above law, we find and hold that there is clear and convincing proof of willful misconduct in office on the part of Judge Martinez. We find that he acted in bad faith by intentionally, wrongfully, and improperly using the power of his office to block the orders of his presiding judge. He demonstrated a specific intent to use the powers of his judicial office to accomplish a purpose that he knew was beyond the legitimate exercise of his authority. It was a knowing, malicious, and corrupt use of judicial power not related to his duties.

We point out, however, that the total impact of his actions was to restrain the sheriff for a few hours from taking two prisoners to the penitentiary.

(b) *Restraints Placed on Children's Court Attorney.*

Judge Martinez issued an order in a juvenile case that had the effect of removing the district attorney as juvenile attorney in that specific case and in all future juvenile cases, and appointing private attorneys to act in that capacity, with compensation to the appointed attorneys to be paid out of the district attorney's budget. The district attorney filed for a writ of prohibition, and this Court issued its alternative writ of prohibition restraining the judge from carrying out his orders.

However, the Judge later issued an order appointing a private attorney to act as special children's court attorney in a case, and directing the district attorney to compensate the private attorney from his budget. The order was issued without notice or hearing, and the district attorney again filed a petition for writ of prohibition, which was granted by this Court. At one point in the proceedings the Judge found the district attorney guilty of contempt and had him placed in jail. We later made the alternative writs of prohibition against Judge Martinez permanent in both cases.

The district attorney in each judicial district is the ex-officio children's court attor-

ney for that district by virtue of statute. Section 32–1–5, N.M.S.A.1978 (Repl.Pamp. 1981). Judge Martinez was therefore without authority to direct the juvenile probation office to refrain from referring juvenile cases to the district attorney without Judge Martinez's prior written consent, to relieve the district attorney as children's court attorney, and to appoint private attorneys to act and to be compensated out of the district attorney's budget.

The language contained in our alternative writ of prohibition issued on June 16, 1981 is clear and unambiguous. Judge Martinez was obligated to act in conformity therewith.

The evidence is clear and convincing that Judge Martinez knowingly and intentionally misused the authority of his office to effect a purpose beyond his legitimate authority, which constituted bad faith, malicious abuse of judicial power, and thus, willful misconduct in office.

(c) *Issuance of Temporary Restraining Order.*

■ The Commission concedes that the appearance of Esteban Martinez before his father to seek a restraining order without compliance with the rules is not sufficient to constitute willful misconduct on the Judge's part. Thus, this issue is reduced to whether a district judge must enforce strict compliance with the rules as regards the allegations in a petition for a temporary restraining order or face removal from office.

Asking the question goes far toward answering it. District judges issue dozens of temporary restraining orders in a year for sudden emergencies, on short notice, and under pressure. Mistakes made by attorneys in making applications for this relief, which are not noticed or corrected by the judges, do not automatically constitute unjudicial conduct. The showing must otherwise conform with the tests for willful misconduct set out herein. The record does not contain clear and convincing evidence that there was willful misconduct sufficient to sustain this charge.

■ Mr. Olmsted, an attorney, acted by Commission order as chairman of the hearing on the Martinez charges. The Judge claims the proceedings are illegal because the New Mexico Constitution provides that the chairman of the Judicial Standards Commission shall be a lay person. N.M. Const. art. VI, section 32. Susan Dixon, a lay person, was the chairman of the Commission.

We see no substance to this claim. Mr. Olmsted was not acting as chairman of the Commission. The chairman has numerous constitutional and statutory duties, which were not assigned to or performed by Mr. Olmsted. The total extent of his performance was to act as temporary presiding officer of the hearing.

Judge Martinez charged that Mr. Olmstead's bias, while acting as chairman of the hearing, voided the proceedings. The record does not sustain the claim. There was no prejudice shown.

We also reject the Judge's claim that the Commission was principally motivated by racial bias as being wholly unsupported by the evidence.

■ We find no substance whatever to Judge Martinez's persistent claim that the Commission failed to charge him with willful misconduct. He states that the Commission charges were grounded solely on violations of the Canons of Judicial Ethics, *see* New Mexico Code of Judicial Conduct 1978 (Repl.Pamp.1981), and that the Constitution does not provide for discipline or removal for such violations. The face of the documents setting forth the charges alleges willful misconduct *and* violations of the Canons. The Canons do not control the determination of the issues here. They only furnish some proof of what constitutes appropriate judicial conduct.

■ Having determined that Judge Martinez is guilty of willful misconduct in office, we order that he is hereby suspended from his office of District Judge of the Fourth Judicial District for a period of sixty days, beginning on the date the mandate is issued in this case. He shall forfeit the

salary of district judge in the gross amount of $8,216.66 and shall pay costs in the amount of $2,321.17 for a total of $10,537.83. He is prohibited from acting in his judicial capacity in any manner whatsoever during his suspension.

IT IS SO ORDERED.

FEDERICI, J., and LORENZO F. GARCIA, RUEBEN E. NIEVES and LOUIS E. DePAULI, District Judges, concur.

## ORDER ON REHEARING

This matter has come on for hearing upon Motion for Rehearing filed on October 25, 1982, by Respondent, Donaldo A. Martinez, District Judge, Fourth Judicial District.

Respondent filed with his Motion for Rehearing additional transcript and addendum.

Based upon this Court's review of the Motion for Rehearing and the record in this cause, it is ordered that the Motion for Rehearing and Reconsideration be denied.

a. Respondent's contention on rehearing that the proceedings before the Judicial Standards Commission are invalid because a member of the Commission, Judge Thomas Donnelly, participated in those proceedings, is without merit. The Judicial Standards Commission minutes reflect the following:

> Judge Donnelly said that Judge Martinez's [sic] animosity toward his father might extend to himself so that it best [sic] that he not participate in the hearing.

b. Respondent's restatement of circumstances deemed to have been ignored by this Court in its original opinion is without merit. The matters raised by respondent are:

(1) The issuance by petitioner of a writ of habeas corpus in the face of an order by another district judge that the parties be transported to the State Penitentiary.

2. The issue of disqualification by petitioner of the District Attorney for the 4th Judicial District and juvenile proceedings, and the subsequent mandate from this Court that petitioner had no authority to disqualify the district attorney.

3. Failure of petitioner to recuse in cases in which the petitioner's son appeared as an attorney before him.

4. Failure of the requisite number of the Judicial Standards Commission to vote in favor of the recommended disciplinary action.

These issues were raised by respondent in the original proceedings and ruled against Respondent. Upon further review we confirm the result reached in the original proceedings.

c. The remaining issues raised by Respondent are without merit.

The opinion of this Court in Cause No. 14,237, In The Matter of Donaldo A. Martinez, District Judge, filed September 29, 1982, shall remain in full force and effect, except that the suspension shall begin on January 17, 1983.

FEDERICI, J., and LORENZO F. GARCIA, RUEBEN E. NIEVES and LOUIS E. DePAULI, District Judges, concur.