2007-NMSC-029

161 P.3d 252

**Inquiry Concerning A Judge,
No. 2004-134.**

**In the Matter of James T. LOCATELLI,
City of Las Cruces Municipal
Court.**

**No. 29,508.**

Supreme Court of New Mexico.

June 14, 2007.

James A. Noel, Elizabeth A. Garcia, Albuquerque, NM, for Judicial Standards Commission.

Rodey, Dickason, Sloan, Akin & Robb, P.A., John M. Brant, Charles K. Purcell, Albuquerque, NM, for respondent.

## OPINION

PER CURIAM.

{1} This matter comes before the Court on a petition for discipline filed by the Judicial Standards Commission (the Commission). As grounds for recommending discipline, the Commission states that a majority of the Commissioners determined that: (1) Judge Locatelli (Respondent) improperly issued criminal contempt complaints to two attorneys, Marcia Milner and Richard Jacquez, for their role in an appeal from his court; and (2) he improperly failed to recuse himself from the contempt proceedings. We deny the petition for discipline because the Commission has failed to prove willful misconduct by clear and convincing evidence. However, we write to clarify the preferred procedure for judges to follow if they believe attorneys are acting unethically in appealing from a judgment.

## BACKGROUND

{2} This is the second time that the Commission has initiated proceedings against Respondent. In February 2006, this Court dismissed an earlier petition for discipline which alleged that Respondent had violated the Code of Judicial Conduct by criticizing the Las Cruces City Attorney's office for failing to prosecute DUI cases. This present petition also arises out of proceedings involving the City Attorney's office. On April 14, 2004, Respondent accepted an uncounseled guilty plea from an eighteen-year-old defendant for stealing a box of tampons. Respondent then sentenced the defendant to ninety days in jail, eighty-eight of which were suspended, and imposed a $500 fine, $300 of which was suspended. Subsequently, Marcia Milner, an attorney from Las Cruces, filed an appeal on behalf of the defendant for a trial de novo. When Respondent received notice of this appeal, he forwarded the record to the district court with a cover sheet informing the district judge that the defendant had entered a guilty plea. Respondent testified before the Commission that when a defendant appealed from a guilty plea, the City Attorney's office would routinely file a motion to dismiss because the defendant was not an aggrieved party under NMSA 1978, § 35–13–1 (1975), and the appeals were routinely dismissed. Nevertheless, in this case, a trial de novo was set for August 10, 2004, and on that date, Richard Jacquez, the assistant city attorney assigned to the case, made an oral motion to dismiss on the basis that the defendant was not entitled to an appeal because she had entered a guilty plea and, thus, was not aggrieved. *See State v. Ball*, 104 N.M. 176, 183, 718 P.2d 686, 692 (1986) (holding that a defendant who enters into an informed guilty plea is not an aggrieved party and cannot appeal to the district court for a trial de novo). The district court judge denied the

motion to dismiss, based on Ms. Milner's argument that her client's plea was uninformed, allowed the defendant to enter another guilty plea, and sentenced her to a six-month deferred sentence with six months unsupervised probation.

{3} Respondent received a copy of the district court judgment in early September 2004. When he received the judgment and sentence, Respondent was concerned that the district judge had been misinformed about how the case had come before him. He then discovered that no written motion to dismiss had been filed by the assistant city attorney, who had not entered an appearance or filed a witness list until eight days before the hearing. Respondent suspected that the assistant city attorney had been unprepared and may not have asked the court to dismiss the case. He subsequently researched the "novel question of what [he] as an inferior court judge could do if [he] believed [his] decisions were being nullified by inaction of the City Attorney." Specifically, Respondent testified at the hearing before the Commission that he consulted with the Municipal League and the Attorney General's office. He also looked into the difference between direct and indirect contempt. Shortly before the sentencing hearing, Respondent was told that the assistant city attorney did not challenge the district court judge's assumption that the defendant had not been informed of her rights or the defense attorney's representation that the defendant was not aware of the consequences of her decision to enter a guilty plea. He acknowledged that he became angry and decided to have both Mr. Jacquez and Ms. Milner "charged with indirect contempt for deliberately misrepresenting procedures employed in the municipal court."

{4} At the sentencing hearing on October 25, 2004, Respondent served both Ms. Milner and Mr. Jacquez with criminal complaints charging them with contempt. The basis of the contempt charge against Ms. Milner was that she filed a notice of appeal in district court knowing that the defendant had entered a guilty plea. The basis of the contempt charge against Mr. Jacquez was that he signed the district court judgment knowing that the appeal from municipal court was

contrary to law. Respondent acknowledged, however, that he charged the attorneys with contempt without actually reviewing the transcript of the district court hearing. He also admitted that he believed he would need to recuse himself from contempt proceedings because his anger at the sentencing hearing had created an appearance of impropriety.

{5} After reviewing the transcript of the district court proceedings on November 4, 2004, however, Respondent decided to dismiss the charges against the attorneys. He informed the City Attorney's office of his decision, but neglected to inform Ms. Milner. Before Respondent dismissed the charges on December 8, 2004, Ms. Milner appeared for a scheduled pre-trial conference and a trial, only to discover nothing was happening. Respondent held no further hearings in the case from the date he charged the attorneys with criminal contempt to the date those charges were dismissed. The Commission concluded that by improperly issuing the criminal contempt complaints and by improperly failing to recuse himself in the contempt proceedings, Respondent had violated the Code of Judicial Conduct and had committed willful misconduct in office. In its petition to this Court, the Commission recommended that we issue a formal public reprimand, and order Respondent to take a judicial ethics course, complete a twelve month mentorship with a district judge and pay the costs of these proceedings. The Commission also recommended that we order that the records of the contempt cases be purged from the district court.

## DISCUSSION

{6} Respondent challenges the Commission's conclusion that he engaged in willful misconduct. He first argues that he did not engage in misconduct at all because the contempt complaints had a sufficient legal and factual basis and that he had jurisdiction to charge the attorneys with indirect contempt. He then argues, alternatively, that even if he did commit legal error in charging the attorneys with contempt, such an action should not expose him to discipline because such an issue is a legal question for the appellate courts, and not the Commission, to decide. Finally, he argues that he did not commit

willful misconduct when he remained assigned to the contempt cases.

■ {7} The New Mexico Code of Judicial Conduct has its origins in the principle that "[a]n independent and honorable judiciary is indispensable to justice in our society." Code of Judicial Conduct, Rules 21–100 to – 901 NMRA pmbl. And, as this Court wrote in construing an earlier version of the Code, "[t]he conduct prescribed for judges and justices is more stringent than conduct generally imposed on other public officials." *In re Romero*, 100 N.M. 180, 183, 668 P.2d 296, 299 (1983). Thus, "any justice, judge or magistrate of any court may be disciplined or removed for willful misconduct in office." N.M. Const., art. VI, § 32. In order to discipline judges, "we must be satisfied by clear and convincing evidence that there is willful judicial misconduct." *In re Castellano*, 119 N.M. 140, 149, 889 P.2d 175, 184 (1995) (per curiam). Clear and convincing evidence is evidence that "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Joseph M.*, 2006–NMCA–029, ¶ 15, 139 N.M. 137, 130 P.3d 198 (quoted authority omitted).

■ {8} In *In re Martinez*, 99 N.M. 198, 203, 656 P.2d 861, 866 (1982), this Court discussed what constituted willful misconduct. We cited with approval the Supreme Court of North Carolina's definition in *In re Edens*, 290 N.C. 299, 226 S.E.2d 5, 9 (1976), that "[w]ilful misconduct in office is improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly, and, generally, in bad faith. It is more than a mere error of judgment or an act of negligence." Thus, negligent violations of the Code of Judicial Conduct do not justify discipline or removal. As we stated in *In re Martinez*, violations of the Code "furnish some proof of what constitutes appropriate judicial conduct," but they do not control the issue of whether discipline should be imposed. *In re Martinez*, 99 N.M. at 204, 656 P.2d at 867. We therefore address whether the facts as found by the Commission demonstrate willful violations of the Code of Judi-

cial Conduct and willful misconduct in office. First, we discuss whether charging the attorneys with criminal contempt constituted willful misconduct and, second, whether failing to recuse constituted willful misconduct.

### The criminal contempt charges

■ {9} The Commission concluded that Respondent had violated Rules 21–100, 21–200(A), 21–300(B)(2) and (4) NMRA of the Code of Judicial Conduct when he charged attorneys Jacquez and Milner with criminal contempt and that such conduct constituted willful misconduct in office. Rule 21–100 requires that "[a] judge shall participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved." Rule 21–200(A) requires that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Rule 21–300(B)(2) requires that "[a] judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor or fear of criticism." Finally, Rule 21–300(B)(4) requires that "[a] judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in the judge's official capacity, and shall require similar conduct of lawyers, and of staff, court officials and others subject to the judge's direction and control."

{10} The Commission's conclusion that Respondent had willfully violated these rules appears to have been based on the following findings: that Respondent improperly charged the attorneys with contempt; that Respondent issued the contempt charges before he reviewed the transcript of the district court hearing; and that he displayed his anger at the hearing when he served the attorneys with the contempt complaints.

■ {11} The Commission inferred that Respondent's actions demonstrated bad faith because the contempt proceedings had no legal or factual basis. Although this infer-

ence is listed as a finding, it is based, in part, on a legal conclusion that there was no legal basis for Respondent's actions, which we review as a matter of law. *See In re Bristol,* 2006–NMSC–041, ¶¶ 16–18, 140 N.M. 317, 142 P.3d 905 (per curiam) (holding that in administrative disciplinary proceedings this Court defers to the fact finder on factual matters but reviews legal conclusions and recommendations for discipline de novo).

{12} The questions of whether Respondent acted correctly in charging the attorneys with indirect contempt or whether he violated the Code of Judicial Conduct are not the precise questions before us. We are specifically concerned with whether any misconduct was willful. *See In re Martinez,* 99 N.M. at 204, 656 P.2d at 867 (pointing out that violations of the Code of Judicial Conduct offer "proof of what constitutes appropriate judicial conduct" but do not control the issue of whether the violations were willful).

■ {13} As Respondent correctly argues, trial courts have the power to hold attorneys in indirect criminal contempt for "disobedient acts performed outside the court's presence." *State v. Wisniewski,* 103 N.M. 430, 434, 708 P.2d 1031, 1035 (1985). However, as we have previously stated, "contempt powers of the court should be used cautiously and sparingly." *Case v. State,* 103 N.M. 501, 503, 709 P.2d 670, 672 (1985). In support of his authority to charge the attorneys with contempt, Respondent argues that our Court of Appeals affirmed a contempt ruling in an abuse and neglect case when the contemnor disobeyed a trial court order after a tribal court issued a contrary order. *See Spear v. McDermott,* 1996–NMCA–048, ¶¶ 32, 37, 121 N.M. 609, 916 P.2d 228.

{14} He also argues that courts in other jurisdictions have, for example, held an attorney in contempt for failing to implement the requirements of a judgment, *see Rintin Corp., S.A. v. Domar, Ltd.,* 403 F.Supp.2d 1201, 1205–06 (S.D.Fla.2005), and held an inmate in contempt for failing to comply with an order of an appellate court by filing a complaint without submitting the complaint to the trial court for approval before filing, *see Sims v. Bramer,* 827 N.E.2d 1187, 1189–90 (Ind.Ct.App.2005). He also alerts us to a case in which a judge was not disciplined for warning a defense attorney, who argued on appeal that the judge had tricked the defendant into pleading guilty, that if the attorney made further unsubstantiated claims, the judge would pursue contempt proceedings. *See In re Buford,* 577 S.W.2d 809, 838 (Mo. 1979) (en banc).

{15} In addition to its findings supporting its conclusions that Respondent acted incorrectly when he charged the attorneys with contempt, the Commission also found that Respondent decided to charge the attorneys with indirect contempt at the sentencing hearing based on a combination of factors: his suspicion that Mr. Jacquez had not moved to dismiss the appeal because he was unprepared; his belief that Ms. Milner and Mr. Jacquez had misrepresented municipal court procedures to the district court; his research on the issue of what he could do if he believed his decisions were being nullified; and his research on the issue of indirect contempt.

{16} These findings were supported by Respondent's uncontradicted testimony before the Commission that before charging the attorneys with contempt, he researched what action he could take if he discovered that Mr. Jacquez had entered into a plea agreement because he was unprepared. He suspected that the attorney could be sanctioned by the Disciplinary Board, but he also believed he could hold the attorneys in indirect contempt if they had attempted to confer jurisdiction on the district court by stipulation. In researching the issue, he consulted with attorneys from the Municipal League and the Attorney General's Office. Respondent testified that the attorney from the Municipal League told him that he did not "think it was out of line" to issue a contempt citation and that the attorney from the Attorney General's Office discussed the possibility of filing a petition for a writ.

{17} Applying the law to the facts as found, we are not persuaded that clear and convincing evidence demonstrated that Respondent's actions constituted willful misconduct in office. However, because he failed to procure the transcript of the district court proceedings to ascertain the facts before act-

ing on his suspicions that the attorneys were ignoring or attempting to circumvent his order, his actions were negligent. Yet negligence is not sufficient to conclude that he engaged in willful misconduct. *See In re Martinez,* 99 N.M. at 203, 656 P.2d at 866.

{18} We emphasize that Respondent has not informed us of a case, and we are not aware of one, that has specifically upheld a judge's order holding an attorney in contempt for filing an appeal from that judge's order, and we do not wish to encourage such a course of action. We recognize that the exercise of a court's criminal contempt power "is intended to preserve the authority of and respect for the courts," *Wisniewski,* 103 N.M. at 434, 708 P.2d at 1035. Indeed, in *Wisniewski,* this Court upheld the district court's contempt citations against prosecuting attorneys who disobeyed discovery orders. *Id.* at 435, 708 P.2d at 1036. A court is also justified in holding the parties themselves in civil contempt for disobeying court orders. *See, e.g., State ex rel. Taylor v. Johnson,* 1998–NMSC–015, ¶ 65, 125 N.M. 343, 961 P.2d 768.

{19} In this case, however, neither attorney was clearly disobeying a court order. Technically, this was an appeal—albeit an appeal from a judgment that Respondent did not believe was appealable, and an appeal in which Respondent believed that the attorneys were attempting to overturn a judgment by misrepresenting what had occurred in his court. Challenging a judgment by appealing is not the same as disobeying a court order, even if there is no right to such an appeal. In circumstances like those in this case, when a judge suspects that an attorney has violated a duty of competence, diligence, or candor toward the court, the preferred course of action is to report the attorney to the Disciplinary Board. And we note that Respondent testified to the Commission that he considered such a course of action. Under Rule 17–102 NMRA, the Disciplinary Board has "the power and duty . . . to consider and investigate the conduct of any attorney within the jurisdiction of the Supreme Court." Rule 17–205 NMRA states that violations of the Rules of Professional Conduct "shall be grounds for discipline."

Thus, if Respondent believed that either or both of the attorneys had violated the Rules of Professional Conduct, it would have been reasonable of him to report either or both to the Disciplinary Board.

{20} Insofar as the Commission determined that Respondent's admitted anger during the sentencing hearing violated his duty under Rule 21–300(B)(4), the Commission's findings do not show that Respondent's anger was expressed in a manner that constituted a willful violation of his duty to be dignified and courteous. Although the Commission found that Respondent acknowledged he had been angry and upset in open court, the findings do not state that Respondent was abusive.

{21} We have previously reprimanded a judge for raising his voice in court to an attorney, admonishing the attorney in front of her client, and preventing her from making full objections. *In re Ramirez,* 2006–NMSC–021, ¶ 3, 139 N.M. 529, 135 P.3d 230 (per curiam). We emphasized in that case that "[t]he most troubling aspect of [the judge's] behavior toward the attorney appearing before him was that [the judge's] actions prevented the attorney from making her full objections for the record." *Id.* ¶ 14. And we stated that "[j]udicial outbursts that interfere with this common, necessary element of trial proceedings will not be condoned." *Id.* (citing Rule 21–300(B)(7) NMRA).

{22} In this case, although Ms. Milner testified that she was unable to respond to the judge's questions, Mr. Jacquez testified that Ms. Milner had explained what had occurred in district court and that he had explained that he had moved to dismiss the appeal because the defendant had pled guilty. And although Ms. Milner believed Respondent was angry, she was unable to testify that he actually raised his voice. Moreover, the testimony of other attorneys present in the courtroom indicated that the judge did not shout at the attorneys or appear disrespectful. Accordingly, we are not persuaded that there was clear and convincing evidence to support a determination that Respondent's conduct constituted a willful

violation of his duty to be courteous to lawyers.

## Recusal

{23} The Commission concluded that by not recusing himself in the contempt case against Mr. Jacquez and Ms. Milner, Respondent violated Rules 21–300(B)(1),(2), 21–400(A)(1) NMRA. Rule 21–300(B)(1) provides that "[a] judge shall hear and decide matters assigned to the judge except those in which disqualification is required." Rule 21–300(B)(2) provides that "[a] judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor or fear of criticism." Rule 21–400(A)(1) provides that a judge shall recuse himself or herself when the judge's impartiality might be questioned, including when "the judge has a personal bias or prejudice concerning a party or a party's lawyer."

{24} The Commission found that after charging the attorneys with indirect contempt on October 25, 2004, Respondent reviewed the record and decided to dismiss the charges. The findings state that even though he had decided to dismiss the charges after reviewing the transcript on November 4, 2004, Respondent continued to take actions in the case. Specifically, the Commission found that Respondent scheduled a pre-trial conference, vacated it, set both cases for trial, vacated both trial settings and rescheduled them before dismissing the contempt charges on December 8, 2004. Because Respondent acknowledged that he should have recused himself in any further contempt proceedings, the Commission found that he improperly failed to recuse and violated the Code of Judicial Conduct. The Commission also concluded that the judge's conduct "was established by clear and convincing evidence and constituted willful misconduct in office." We assume, without deciding, that Respondent was required to recuse from the contempt proceedings. *See State v. Stout,* 100 N.M. 472, 475, 672 P.2d 645, 648 (1983). However, our review of the evidence does not support the finding that he continued to take actions in the case before dismissing it.

{25} While it is undisputed that additional hearings were set before the case was dismissed, Respondent testified before the Commission that the pretrial hearing and a trial setting were automatically scheduled by the clerk's office. No evidence presented at the hearing challenged this explanation. Respondent also testified that he resolved to dismiss the contempt charges as soon as he read the transcript of the district court proceedings and informed the City Attorney's office of his intent; he also acknowledged that he neglected to inform Ms. Milner. While a better course of action would have been to enter an order dismissing the case immediately upon deciding to do so, it is undisputed that no further hearings actually occurred before the case was dismissed. Consequently, there is not clear and convincing evidence to support a legal conclusion that Respondent committed willful misconduct in office by acting in a case in which he knew he should have recused himself.

## CONCLUSION

{26} We conclude that the Commission has not shown by clear and convincing evidence that Respondent's conduct constituted willful misconduct in office, which is the requirement for the serious matter of disciplining or removing an elected judge from office provided by the New Mexico Constitution. While Respondent acted negligently, both in charging the attorneys with indirect contempt and in failing to dismiss the case promptly, that conduct is not grounds for discipline under Article VI, Section 32 of the New Mexico Constitution. We therefore deny the relief requested because the Judicial Standards Commission failed to prove willful misconduct by clear and convincing evidence.

{27} **IT IS SO ORDERED.**