This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**IN THE MATTER OF THE ESTATE OF**
**GREGORIA C DE BACA, Deceased.**

**EDWINA CHAPMAN and**
**GILBERT C DE BACA,**

     Plaintiffs-Appellants/Cross-Appellees,

v.                                **NO. 27,069**

**VINCENT VARELA,**

     Defendant-Appellee/Cross-Appellant,

and

**IN THE MATTER OF THE ESTATE OF**
**GREGORIA C DE BACA, Deceased.**

**EDWINA CHAPMAN and GILBERT C DE BACA,**

     Plaintiffs-Appellees,

v.                                **NO. 27,164**

**VIOLA VARELA,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Carol Vigil and Daniel A. Sanchez, District Judges**

J. Ronald Boyd
Santa Fe, NM

for Appellants/Cross-Appellees

Simons & Slattery, LLP
Thomas A. Simons, IV
Faith Kalman Reyes
Santa Fe, NM

Canepa & Vidal, P.A.
Timothy Vidal
Santa Fe, NM

for Appellee/Cross-Appellant

J. Ronald Boyd
Santa Fe, NM

for Appellees

Simons & Slattery, LLP
Thomas A. Simons, IV
Faith Kalman Reyes
Santa Fe, NM

Canepa & Vidal, P.A.
Timothy Vidal
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

In *Chapman v. Varela (Chapman I)*, 2008-NMCA-108, 144 N.M. 709, 191 P.3d 567, we concluded that there was insufficient evidence to support the district court's finding that the challenged will was the product of undue influence. *Id.* ¶ 47. Our Supreme Court reversed *Chapman I* and held that the district court's finding of undue influence was supported by clear and convincing evidence. *Chapman v. Varela (Chapman II)*, 2009-NMSC-041, ¶ 2, __ N.M. __, __ P.3d __. On remand, we evaluate the remaining issue in the case: whether five warranty deeds conveying property between mother and daughter were the product of undue influence. We conclude that the district court's finding of undue influence relating to the deeds was supported by clear and convincing evidence and affirm on this issue.

## II.	BACKGROUND

The facts of this case have been developed in *Chapman I* and *Chapman II*. We review briefly only those facts necessary to establish a context for our discussion and develop any other necessary facts as we analyze the issue.

Gregoria C de Baca died on May 11, 2004, and was survived by nine children. Approximately three years before her death, Gregoria signed five deeds, all of which were recorded. The deeds gave all of her property to one child, Viola. Gregoria also executed a will ensuring that all of her property went to Viola. After Gregoria died, six of her other children, Edwina, Gilbert, Rudy, Daniel, Rosina, and Donna (Siblings)

challenged the deeds and the will. After a bench trial, the district court found that the will and the deeds were the product of undue influence. The will was the subject of *Chapman I* and *Chapman II*. In *Chapman II*, our Supreme Court upheld the district court's ultimate conclusion that the will was void and remanded the matter of deed validity to this Court. 2009-NMSC-041, ¶¶ 2, 48.

## II. DISCUSSION

### A. Standard of Review

The issue before us is whether sufficient evidence supported the district court's finding that Viola exerted undue influence over Gregoria with regard to the deeds. *See id.* ¶ 2. Undue influence must be established by clear and convincing evidence. *In re Estate of Gersbach*, 1998-NMSC-013, ¶ 9, 125 N.M. 269, 960 P.2d 811. Clear and convincing evidence "is evidence that instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Locatelli*, 2007-NMSC-029, ¶ 7, 141 N.M. 755, 161 P.3d 252 (alteration in original) (internal quotation marks and citation omitted). We consider the evidence in the light most favorable to the prevailing party, *Gersbach*, 1998-NMSC-013, ¶ 10, and we disregard any inferences and evidence to the contrary. *Doughty v. Morris*, 117 N.M. 284, 287, 871 P.2d 380, 383 (Ct. App. 1994).

**B.      Undue Influence**

A presumption of undue influence arises if "a confidential or fiduciary relation with a donor is shown together with suspicious circumstances." *Chapman II*, 2009-NMSC-041, ¶ 7 (internal quotation marks and citation omitted). "The role of the appellate court reviewing sufficiency of the evidence to support a finding of undue influence is simply to determine whether the presumption of undue influence could have been raised." *Id.* ¶ 17. We look to the evidence regarding the relationship between Gregoria and Viola and the circumstances existing when the deeds were prepared and recorded.

**1.      Confidential Relationship**

There is no issue regarding the relationship between Gregoria and Viola. The district court found that there was a confidential relationship. This Court held that there was sufficient evidence to support that finding. *Chapman I*, 2008-NMCA-108, ¶ 16. Our Supreme Court reviewed the record and came to the same conclusion. *Chapman II*, 2009-NMSC-041, ¶ 19 (observing that the level of trust and dependence between Gregoria and Viola would "satisf[y] even the most stringent definitions of a confidential or fiduciary relationship").

**2.      Suspicious Circumstances**

Suspicious circumstances are demonstrated by evidence of (1) the old age and

weakened physical condition of the donor, (2) the lack of consideration for the gift, (3) the unnatural or unjust nature of the disposition of property, (4) the participation of the beneficiary in the procurement of the property, (5) the domination or control over the donor by the beneficiary, and (6) the failure of the beneficiary to disclose the gift. *Id.* ¶ 7. "This is not an exhaustive list, nor is it a list of circumstances that are always suspicious. Furthermore, the presence of any of these circumstances is not in itself dispositive." *Id.* (internal quotation marks and citation omitted). The *Chapman II* Court concluded that there was sufficient evidence to support the following suspicious circumstances: Gregoria's age and health, *id.* ¶ 22 ("Gregoria suffered a stroke that had detrimental effects on her cognition, memory, and hearing; she sustained a series of physical maladies including multiple hip replacements, bone fractures, and heart problems; and she took a number of medications with possible cognitive side effects"), Viola's control or dominance over Gregoria, *id.* ¶ 40 ("that Viola may have taken part in firing an attorney retained by Gregoria to investigate the deeds; that Viola spoke for Gregoria; that Viola disparaged the other siblings, although not to the point of estranging them; that Gregoria was submissive around Viola; and that Viola manipulated Gregoria's bank accounts"), and Viola's secretive acquisition of the deeds. *Id.* ¶ 43 (observing that even though the siblings discovered the deeds through Viola's son's inadvertence, their discovery does not "negate the

suspicious character of Viola's secrecy"). We thus consider the remaining factors in the context of the deeds in order to determine whether, all together, sufficient evidence of suspicious circumstances existed to raise a presumption of undue influence. We begin by evaluating the nature of the disposition of the property.

An unnatural or unjust disposition includes "transfers of property at odds with a testator's previously expressed intentions and affections." *Id.* ¶ 25. The district court found that the conveyances "were at variance with the previous declarations and known affections of Gregoria." The record reflects the following facts: (1) four of the siblings testified that Gregoria intended to leave one parcel of property to Gilbert; (2) three siblings testified that she meant to leave another parcel to Donna; (3) Rudy testified that when they spoke with Gregoria about the transfers, Gregoria denied having "given anything to anybody;" and (4) Edwina testified that when she discussed the deeds with Gregoria, Gregoria stated more than once that she wanted her properties "back in [her] name" and that she wanted to "go to the courthouse and change it." This testimony provides sufficient evidence to support the district court's findings and thus, established that the deeds, which transferred all of Gregoria's property to Viola, were at odds with her previously expressed intent. We turn now to consider whether Viola participated in the procurement of the deeds.

The district court found that Viola "was directly involved in the procurement

of . . . the deeds to herself." The evidence adduced at trial supports this finding. Viola made the appointment with the surveyor, accompanied Gregoria to the meeting, and did most of the talking with the surveyor. When the deeds were complete, Viola accompanied Gregoria to pick them up. Edwina testified that Viola told her that she had her name put on the deeds so that the other siblings could not take the same course.

There was conflicting testimony about the notarization of the deeds, which is part of the deed procurement. Viola testified that on the day that the deeds were notarized, she picked up Gregoria from the hospital and that the deeds were notarized at the Berardinelli Funeral Home on the way home. Mr. Clifford, the notary at Berardinelli's, recognized his own signature, testified as to his procedure for notarization—including requiring photo identification—but could not find his notary log book to verify the transaction and did not remember having notarized the five deeds. Edwina, however, testified that on the day that the deeds were notarized, Gregoria had been released from the hospital, was on painkillers and oxygen, and was groggy. Edwina explained that she took Gregoria home from the hospital and, once home, Gregoria stayed in bed and did not go out again. Gilbert, Rosina, and Rudy agreed with Edwina's version of events. It is undisputed that the deeds were notarized on this day. Therefore, there is evidence to raise questions about the notarization of

the deeds and what part Viola played in this regard. This, together with the other evidence regarding how the deeds were prepared supports the district court's finding that Viola was directly involved in the deed procurement.

There is sufficient evidence to support the district court's findings regarding Gregoria's old age or weakened physical or mental condition, the unnatural or unjust nature of the disposition, Viola's participation in the procurement of the deeds, Viola's domination or control over Gregoria, as well as Viola's secrecy about the deeds. These factors taken individually might not be enough to justify a finding of suspicious circumstances. Here, however, we rely on the facts of this case, and we hold that the combination of all the factors support the conclusion that there were suspicious circumstances surrounding the deeds.

**3.   Presumption of Undue Influence**

The evidence of suspicious circumstances, considered with the confidential relationship between Viola and Gregoria, was sufficient to raise a presumption of undue influence. *See id.* ¶ 47. "Once raised, this presumption permit[ted] the fact finder to draw an inference of the presumed fact from proof of the basic or predicate fact." *Id.* (alteration in original) (internal quotation marks and citation omitted). When "the fact finder concludes that the party raising the presumption has prevailed

and we find sufficient evidence to support the raising of the presumption, we will not set aside the fact finder's conclusion on appeal." *Id.* ¶ 12.

## III.  CONCLUSION

There was sufficient evidence  of a clear and convincing nature to support the district court's finding that the deeds were the product of undue influence.  We affirm the district court.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**LINDA M. VANZI, Judge**